UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FREE SPEECH FOUNDATION, INC.)
d/b/a AMERICA'S FRONTLINE )
DOCTORS, an Arizona nonprofit )
corporation, and JOSEPH GILBERT, )
                                  )
            Plaintiffs,           )        Case No.
                                  )
v.                                )
                                  )
SIMONE GOLD,                      )
                                  )
            Defendant.            )
                                  )

---

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

NOW COMES Plaintiffs, Free Speech Foundation, Inc. d/b/a/ America's Frontline Doctors, Inc. ("ALFDS") and Joseph Gilbert, by and through the undersigned counsel, to seek an emergency injunctive relief pursuant to Fed. R. Civ. P. 65 and L.R. 6.01, to restrain and enjoin Defendant, Simone Gold.

In addition, Plaintiffs seek temporary and permanent injunctive relief to enjoin, restrain, and otherwise prohibit Defendant from (1) using AFLDS' foundation funds for personal purposes; (2) interfering with AFLDS' operations, funds, donor relationships, employee relationships; (3) converting and improperly asserting control over AFLDS bank accounts, money, and other resources; (4) defaming and disparaging Mr. Gilbert and others associated with ALFDS; (5)

fraudulently holding herself out at a representative, employee, officer, and director of AFLDS; and (6) illegally asserting control over AFLDS' electronic and information technology systems.

## INTRODUCTION

1. This is an action that seeks to prevent the rogue founder of AFLDS, Simone Gold, who has not been a director, officer, or employee of AFLDS since early 2022 from gaining access and use of charitable funds for her own personal benefit and from trying to illegally and fraudulently wrest control away from AFLDS' rightful Board of Directors.

2. Specifically, Gold has used AFLDS charitable funds to purchase a $3.6 million home in Naples, Florida for her personal rent-free use, and at least three vehicles and has otherwise used AFLDS funds to resource her personal lifestyle and expenses since she formed AFLDS. Further, over the last several weeks, despite having no director, officer, or employee role with the organization, Gold has interfered with AFLDS' operations, funds, donor relationships, employee relationships, converted and improperly asserted control over AFLDS information technology, bank accounts, money and resources, defamed and disparaged the Board Chairman Mr. Gilbert and others associated with ALFDS, and fraudulently held herself out at as representative, officer, and director of AFLDS.

3. Gold's conduct has caused and is likely to cause further irreparable harm to Plaintiffs for which there is no adequate remedy at law. Further, Plaintiffs have a substantial likelihood of success on the merits of their claims. And given that AFLDS is a public charity, considerations of the public interest weigh heavily in favor of the Court granting the relief AFLDS is seeking.

## JURISDICTION AND VENUE

4. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332 and the damages in this matter exceed the jurisdiction minimum of $75,000.

5. Venue is proper under 28 U.S.C. §1391(e) because Defendant resides in this district.

## PARTIES

6. Plaintiff AFLDS is an Arizona nonprofit organization with its principal place of business in Tucson, Arizona. Plaintiff AFLDS is a citizen of Arizona.

7. Plaintiff Gilbert is a citizen of Nevada.

8. Defendant is a domiciled in, and, upon information and belief, is a citizen of Florida, and is not a citizen of Arizona or Nevada.

## ALLEGATIONS OF FACT

9. Simone Gold incorporated ALFDS in June 2020 under the Arizona Nonprofit Corporation Act. AFLDS was organized "exclusively for charitable purposes" specifically "to perform, every act or acts necessary, incidental to or connected with

the furtherance of its charitable, scientific, literary, religious, and educational purposes, with a focus on educating the public on the enduring importance of the Bill of Rights to America's history and civic traditions."

10. AFLDS is currently governed and always has been governed by a Board of Directors. From September 2020 through January 2022, Gold was a director and the executive director of AFLDS. In her role as executive director, Gold authorized the hiring of employees, developed and supervised AFLDS' charitable programs, developed and managed partnerships with other organizations, oversaw fundraising activities, and oversaw communications with program participants, government officials, and the general public.

11. Plaintiff Gilbert is the AFLDS Chairman of the Board, Chief Operating Officer, and Director of Strategy.

**Gold's Misuse of Charitable Funds**

12. On November 14, 2021, Gold signed a contract listing herself as buyer of a residential property in Naples, Florida for the purchase price of $3,600,000 (the "Naples Home"). Gold purchased this home with AFLDS funds without authorization or approval by the Board of Directors and in violation of Internal Revenue Code §§ 501(c)(3) and 4958.

13. The deed to the Naples Home records Naples Freedom Headquarters LLC as the owner of that property. Gold was originally identified as the "manager" of Naples

Freedom Headquarters; however, on January 14, 2022, Articles of Amendment were filed naming AJ Andrzejewski, an AFLDS employee, as the manager. Gold currently lives in this home with John Strand, rent free.

14. On November 17, 2021, Gold signed a residential lease as a tenant of a separate property in Naples, Florida pursuant to which she was to pay $45,000 in advance, followed by $15,000 per month for the duration of the 12-month lease term. That lease term began January 1, 2022. An amendment to the lease agreement substitutes Free Speech Foundation, Inc. for Gold as the tenant of the property. The property is listed as the address of AJ Andrzejewski on a January 20, 2022, corporate report for Naples Freedom Headquarters. Mr. Andrzejewski and his wife lived in this house rent free.

15. At or around this same time, Gold purchased three vehicles including a Mercedes Benz Sprinter van, a Hyundai Genesis, and a GMC Denali, using AFLDS funds for her own personal transportation needs.

16. After Gold took possession of the Naples Home she began using AFLDS funds to pay a personal security officer $12,000, a personal housekeeper $5,600 month, and otherwise spending money for personal items on AFLDS credit cards at a rate of nearly $50,000 per month. Additionally, the Naples Home was used by GoldCare employees.

17. An AFLDS employee named John Strand lived with and continues to live with Gold at the Naples Home and was not only paid $10,000 a month as an employee, but was given access to AFLDS credit cards at Gold's direction and spent between $15,000 and $17,000 a month on those credit cards. Mr. Strand's employment was terminated by AFLDS in the summer of 2022.

18. On at least two occasions, Gold flew on private planes using AFLDS funds without approval or authorization from the Board of Directors. One of those trips exceeded $100,000.

19. On February 2, 2022, at an AFLDS Board of Directors meeting, Gold resigned from AFLDS' Board so that she could devote time and energy to her vision of opening health and wellness centers nation-wide. The Board unanimously voted to accept Gold's resignation, voted Mr. Gilbert into the Chairman position, Amy Landau as the Executive Director, and the remaining board members as Jurgen Matthesius, and Richard Mack.

20. At the same February 2, 2022 Board meeting, Mr. Gilbert suggested that Gold and ALFDS enter into a consulting agreement so that Gold could continue as the "face" of AFLDS and using her marketing skills to raise money for AFLDS. The Board voted to have Mr. Gilbert negotiate the consulting agreement with Gold.

21. During the negotiations of the consulting agreement, Gold sought from AFLDS a "signing bonus" of $1.5 million and $50,000 monthly as a consulting fee.

Under that agreement, GoldCare (discussed below) was also to be granted, at no cost, private work space and accommodations at the Naples Home.

22. Gold created a for-profit enterprise called GoldCare Marketing Services LLC ("GoldCare") to pursue the creation of health and wellness centers. After doing so, through her influence, Gold began diverting numerous AFLDS employees that are paid by AFLDS to work at GoldCare, allowing AFLDS to pay their salaries despite doing little to no work for AFLDS.

**Gold's Tortious Interference and Illegal Attempts to Seize Control**

23. On June 22, 2022, Gold was sentenced to serve 60 days in federal prison after pleading guilty to a misdemeanor charge of unlawfully entering and remaining in a restricted area of the U.S. Capitol on January 6, 2022.

24. While Gold served her prison sentence, Plaintiff Joseph Gilbert, the Board Chairman and Director of Strategy, stepped into day-to-day operations to help AFLDS run smoothly during Gold's absence. By that time, the Board had become aware of Gold's uses of AFLDS funds and hired a forensic auditor, obtained a compensation study, and had its outside accounting firm begin a financial audit in order to determine what next steps should be taken with regard to Gold's use of AFLDS funds for her personal use.

25. Gold was released from prison on September 9, 2022 and continues to be under supervised release. Upon Gold's release, Mr. Gilbert, as Chairman of the

AFLDS Board, advised Gold of the steps the Board had taken in her absence to look into her use of charitable funds for personal purposes and the steps it would need to take as a result.

26. Although Gold feigned understanding and acceptance of the steps AFLDS would need to take, it became evident shortly thereafter that Gold would do anything but accept what was in the best interests of AFLDS, its donors, employees, and mission.

27. Gold wanted to take back control of AFLDS and restore herself into a leadership role with the organization. Indeed, even though she had no role other than as a consultant, Gold began directing AFLDS employees in different ways in attempts to learn information and seize control.

28. On October 4, 2022, Gold sent an email addressed to "the AFLDS Board of Directors," identifying Pastor Jurgen Matthesius and Richard Mack, in which she alleged that the third Board Member, Plaintiff Mr. Gilbert, had engaged in wrongdoing in his role with AFLDS. In that email, Gold demanded that the Board take certain steps to essentially remove Mr. Gilbert from the Board and investigate her allegations.

29. The Board responded to Gold's allegations by retaining counsel to investigate her allegations thoroughly. However, as soon as this investigation began, Gold began threatening the Board, AFLDS' counsel, and employees that she would interfere

with AFLDS donors, to persuade them not to make donations to AFLDS if her demands were not met. During this time, Gold continued to participate in speaking engagements representing AFLDS in public forums. AFLDS representatives learned that Gold falsely told donors that Mr. Gilbert had engaged in financial improprieties, ethical violations, and corruption.

30. Beginning in October 2022, Gold has interfered with, sought to seize control of, and ultimately taken control of AFLDS in the following manner and by the following actions:

- On October 12, 2022, Gold sent the Executive Director and her personal assistant, Lisa Andrzejewski, to a Board meeting to read a demand letter by Gold that each member of the Board resign immediately. That letter also threatened each Board Member with litigation and exposure "by name and location to the public" if they did not immediately resign from their positions as board members. (Ex. 1 hereto, Gold 10/12/22 Demand Letter)

- In response to requests that Gold refrain from disparaging board members or discussing her allegations or the investigation into those allegations with donors, Gold advised AFLDS' counsel, among other things, that she would do what she needed to do and that AFLDS donors she had been in touch with are "aware that their monies, which they donated for specific reasons I promised to guard, are at risk." She also stated that whether she disparaged Mr. Gilbert in public depended upon him resigning from his position on the Board. (Ex. 2 hereto, Gold 10/7/22 Email to Counsel)

- On October 31, 2022, without the authorization of the Board, Gold sent a letter on AFLDS' letterhead, fraudulently signing her name as the "Chairman and President of AFLDS," to Mr. Gilbert asserting that he had committed ethical violations and that he was recused from the Board.

- On November 1, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, fraudulently signing her name as the "Chairman and President of AFLDS," to AFLDS outside counsel, Wagenmaker &

Oberly, purporting to terminate its representation of AFLDS. (Ex. 3 hereto, Gold 11/1/22 Ltr to W&O)

- On November 1, 2022, without the authorization of the Board, Gold sent a letter to the AFLDS employees which, among other things, accused Mr. Gilbert of "improper financial dealings" and falsely asserted that she was the Chairman and President of AFLDS. (Ex. 4 hereto, Gold 11/1/22 Ltr to AFLDS Staff)

- On November 2, 2022, without the authorization of the Board, Gold entered the Microsoft Teams application used by ALFDS employees and advised the employees falsely, among other things, that she was the "legitimate Chairman of the Board and President" and that Mr. Gilbert had been recused from the Board and no authority to act on behalf of AFLDS. She also advised that employees were not to take any orders other than from her, the President or from the Executive Director Lisa Andrsejewski (whose employment had been terminated by the AFLDS Board).

- On November 2, 2022, without the authorization of the Board, Gold advised AFLDS' treasurer not to abide by directions from the Board of Directors regarding funds or the entity's bank accounts and payments.

- On November 2, 2022, without the authorization of the Board, directed AFLDS employees to seize control of AFLDS' electronic mail, website domain name systems ("DNS"), and other electronic databases, and lock certain employees out of these systems.

- On November 3, 2022, without the authorization of the Board, Gold purportedly on behalf of AFLDS, and identifying herself as the "Chairman and President of AFLDS," released a press release that reported she had "resumed" her role as Chairman and President of AFLDS and repeated Gold's allegations against Mr. Gilbert that she announced to the AFLDS employees. (Ex. 5 hereto, 11/3/22 Gold Press Release)

- On November 3, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, signing her name as the "Chairman and President of AFLDS," to AFLDS' in-house counsel advising her that she was suspended without pay for violating Gold's order that AFLDS employees disregard requests from the Board. (Ex. 6 hereto, 11/3/22 Gold Ltr. to Bradford)

31. As a result of Gold's actions, individual employees have no access to their email accounts and are unable to perform their job functions as AFLDS employees; the rightful Board of Directors has no control over AFLDS' finances, IT and other electronic systems, intellectual property, public representations, or employees. Gold has wrongfully and illegally seized control and taken over AFLDS' resources and people. None of her actions have been approved by the Board of Directors and she has no legal right to act as she has acted.

## COUNT I
### Fraud
### Asserted by Plaintiff AFLDS

32. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

33. Defendant has made false statements of material fact that she knows to be false as described above.

34. Defendant made the false statements of material fact described above with the intent to induce others to rely on those statements.

35. As a result of and in reliance on Defendants false statements of material fact, Plaintiffs have been damaged in an amount to be proven at trial, but in excess of $75,000.

## COUNT II
## CONVERSION
### Asserted by Plaintiff AFLDS

36. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

37. Defendant has wrongfully asserted dominion over AFLDS' bank accounts, IT systems and domain names, employees, money, and other resources.

38. Defendant's actions are inconsistent with her lack of ownership over such AFLDS' property and resources.

39. As a direct and proximate cause of Defendant's actions, Plaintiff AFLDS has been damaged in an amount to be proven at trial, but in excess of $75,000.

## COUNT III
## TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIPS
### Asserted by Plaintiff AFLDS

40. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

41. A business relationship, in the form of an employment relationship, existed between Plaintiff AFLDS and employees.

42. Defendant is and has at all times been aware of AFLDS' relationships with its employees.

43. By her actions described above, Defendant has intentionally and without justification interfered with Plaintiff AFLDS' relationships with its employees and

caused employees to refuse to perform their jobs pursuant to their job duties and responsibilities.

44. As a direct and proximate cause of Defendant's tortious interference, Plaintiff AFLDS has suffered damages in an amount to be proven at trial, but in excess of $75,000.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### Asserted by Plaintiff AFLDS

45. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

46. A business relationship existed between Plaintiff AFLDS and its lawyers, its donors, its banks and a relationship existed between Plaintiff AFLDS and the Internal Revenue Service by virtue of AFLDS' status as a charitable organization under Internal Revenue Code Section 501(c)(3).

47. Defendant is and has at all times been aware of AFLDS' relationships with the entities referenced above.

48. By her actions described above, Defendant has intentionally and without justification interfered with Plaintiff AFLDS' relationships with its lawyers, donors, and banks, as well as its relationship with the IRS as a 501(c)(3) organization.

49. As a direct and proximate cause of Defendant's tortious interference, Plaintiff AFLDS has suffered reputational and other harm in an amount to be proven at trial, but in excess of $75,000.

## COUNT V
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS
### Asserted by Plaintiff AFLDS

50. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

51. Prospective business relationships existed between Plaintiff AFLDS and its donors and prospective donors.

52. Defendant is and has at all times been aware of AFLDS' relationships with the donors and prospective donors referenced above.

53. By her actions described above, Defendant has intentionally and without justification interfered with Plaintiff AFLDS' relationships with its donors and prospective donors.

54. As a direct and proximate cause of Defendant's tortious interference, Plaintiff AFLDS has suffered reputational and other harm in an amount to be proven at trial, but in excess of $75,000.

## COUNTI VI
## BREACH OF FIDUCIARY DUTY: WASTE OF CHARITABLE ASSETS
### Asserted by Plaintiff AFLDS

55. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

56. During Defendant's time as a director and officer of AFLDS, Defendant owed AFLDS fiduciary duties of care, loyalty, and obedience.

57. As described above, Defendant, in breach of those duties, used and caused AFLDS assets to be used for her own personal use and not for AFLDS' charitable purposes.

58. Defendant's actions wasted AFLDS charitable assets in contravention of public policy and the Arizona Nonprofit Corporation Act.

59. As a direct and proximate cause of Defendant's actions, Plaintiff AFLDS has suffered damages in an amount to be proven at trial, but in excess of $75,000.

## COUNT VII
## BREACH OF FIDUCIARY DUTY - SELF-DEALING
### Asserted by Plaintiff AFLDS

60. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

61. During Defendant's time as a director and officer of AFLDS, Defendant owed AFLDS fiduciary duties of care, loyalty, and obedience.

62. As described above, Defendant, in breach of those duties, used and caused AFLDS assets to be used for her own personal use and used AFLDS funds without authorization of the independent directors. Further, Defendant voted on her own compensation and failed to recuse herself from this conflict of interest.

63. Defendant's actions constitute self-dealing in violation of her fiduciary duties and were in contravention of public policy and the Arizona Nonprofit Corporation Act.

64. As a direct and proximate cause of Defendant's actions, Plaintiff AFLDS has suffered damages in an amount to be proven at trial, but in excess of $75,000.

**COUNT VIII**
**DEFAMATION**
**Asserted by Plaintiff Joseph Gilbert**

65. Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

66. Defendant published false statements about Mr. Gilbert to third parties including AFLDS employees in her written letters to the employees described above and to the public in the press release described above.

67. Defendant acted negligently as to the falsity of statements made to the AFLDS employees and the public.

68. As a direct and proximate cause of Defendant's false statements, Mr. Gilbert has suffered damages to his reputation in an amount in excess of $75,000.

## REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF

69.Plaintiffs reallege and incorporate by reference all of the allegations in paragraphs 1 through 31 of this complaint.

70.As set forth above, Plaintiffs are likely to succeed on the merits of their claims in light of Gold's improper and illegal actions.

71.Plaintiffs have suffered and will continue to suffer irreparable damage as a result of Gold's ongoing illegal conduct of interfering with AFLDS' operations, employees, and resources, and defaming and disparaging Mr. Gilbert.

72.Injunctive relief will cause Gold no damage and it would serve the public interest given that AFLDS is a public charity.

WHEREFORE, based on the foregoing, Plaintiffs respectfully request the following relief:

That the Court issue an injunction ordering Gold to (1) return control of AFLDS resources over which she has seized control to the Board of Directors; and (2) prohibiting Gold from (a) using AFLDS' foundation funds for personal purposes; (b) interfering with AFLDS' operations, funds, donor relationships, employee relationships; (c) converting and improperly asserting control over AFLDS bank accounts, money, and other resources; (d) defaming and disparaging Mr. Gilbert and others associated with ALFDS; (e) fraudulently holding herself out at a representative, employee, officer, and director of AFLDS; and (f) accessing or

17

asserting control over AFLDS' electronic and information technology systems. For all such other immediate injunctive relief as the Court deems just and fit.

## REQUEST FOR FURTHER RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Enter judgment in favor of Plaintiffs and against the Defendant;

B. Declare that the actions of the Defendant constituted fraud, conversion, tortious interference, breaches of fiduciary duty, and defamation.

C. Award Plaintiffs compensatory damages in an amount to be proven at trial, but in excess of $75,000.

D. Award Plaintiffs punitive damages in such amount as the Court deems proper;

E. Award Plaintiffs their costs, attorneys' fees, and non-taxable expenses in this action; and

F. Grant Plaintiffs such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs hereby demand trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

/s/ *Joshua D. Lerner*
_____
Joshua D. Lerner
Florida Bar No. 455067
E-mail: jlerner@rumberger.com,
docketingmiami@rumberger.com,
and jlernersecy@rumberger.com
RUMBERGER, KIRK & CALDWELL,
P.A.
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

Samantha D. Duke
Florida Bar No. 091403
Email: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133

*Attorneys for Plaintiff*

## VERIFICATION

I, Joseph Gilbert, hereby declare as follows:

I am a plaintiff in this action, and I am Chairman of the Board of Directors, Chief

Operating Officer, and Director of Strategy of Plaintiff Free Speech Foundation, Inc. d/b/a

America's Frontline Doctors, Inc. I have read the foregoing verified complaint for injunctive

relief and damages. Based upon my personal knowledge and upon documents maintained by

Free Speech Foundation, Inc. d/b/a America's Frontline Doctors, Inc. in the regular course of its

19

operations, as well as upon discussions with and reliance upon counsel, the complaint is true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of pedury that the foregoing is true and correct.

Executed this _____: 11/04/2022

_____

Joseph Gilbert

17296509.v1