UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| FREE SPEECH FOUNDATION, INC. d/b/a AMERICA'S FRONTLINE DOCTORS, INC., an Arizona nonprofit corporation, and JOSEPH GILBERT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 22-CV-00714 |
| v. | ) ) ) | |
| SIMONE GOLD, | ) ) ) | |
| Defendant. | ) ) | |

_____

**PLAINTIFFS' VERIFIED MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION,
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Fed. R. Civ. P. 65 and L.R. 6.01, Plaintiffs, Free Speech

Foundation, Inc. d/b/a/ America's Frontline Doctors, Inc. ("ALFDS") and Joseph

Gilbert, by and through the undersigned counsel, hereby move this Court for a

Temporary Restraining Order and Preliminary Injunction restraining and enjoining

Defendant, Simone Gold.[1]

_____

[1] Plaintiffs have received the Court's Order (DE 6).  Plaintiffs did not intend for the
Court to issue a temporary restraining order based solely on the complaint.  Nor was
it Plaintiffs' intent to seek a no-notice hearing. Plaintiffs have delivered the summons
and complaint to a process server and have inquired of Defendant's counsel whether

Plaintiffs have filed a Verified Complaint (DE 1) that seeks to prevent the rogue founder of Free Speech Foundation, Inc. d/b/a America's Frontline Doctors ("AFLDS"), Simone Gold, who has not been a director, officer, or employee of AFLDS since early 2022 from gaining access and use of charitable funds for her own personal benefit and from trying to illegally and fraudulently wrest control away from AFLDS' rightful Board of Directors. Specifically, Gold has used AFLDS charitable funds to purchase a $3.6 million home in Naples, Florida for her personal rent-free use, and at least three luxury vehicles and has otherwise used AFLDS funds to resource her personal lifestyle and expenses since she formed AFLDS. Further, over the last several weeks, despite having no director, officer, or employee role with the organization, Gold has interfered with AFLDS' operations, funds, donor relationships, employee relationships, converted and improperly asserted control over AFLDS information technology, bank accounts, money and resources, defamed and disparaged the Board Chairman Mr. Gilbert and others associated with ALFDS, and fraudulently held herself out at a representative, officer, and director of AFLDS to AFLDS staff, AFLDS donors, and the public. As shown below, Gold's wrongful, unauthorized conduct, threatening AFLDS ability to operate, has continued even through November 7, 2022.

---

Defendant will accept service of process. A Rule 65 certificate is included with this motion.

Gold's conduct has caused and is likely to cause further irreparable harm to Plaintiffs for which there is no adequate remedy at law. Further, Plaintiffs have a substantial likelihood of success on the merits of their claims. And given that AFLDS is a public charity, considerations of the public interest weigh heavily in favor of the Court granting the relief AFLDS is seeking. Under these circumstances, a temporary restraining order is required. *Consumer Energy Solutions, Inc. v. Jacobs*, 2017 U.S. Dist. LEXIS 12223, at 6-7 (M.D. FL Jan 30, 2017).

## FACTUAL BACKGROUND[2]

Simone Gold incorporated ALFDS in June 2020 under the Arizona Nonprofit Corporation Act "exclusively for charitable purposes," and specifically "to perform, every act or acts necessary, incidental to or connected with the furtherance of its charitable, scientific, literary, religious, and educational purposes, with a focus on educating the public on the enduring importance of the Bill of Rights to America's history and civic traditions." DE 1 at ¶ 9. AFLDS is currently governed and always has been governed by a Board of Directors. *Id.* at ¶ 10.

From September 2020 through January 2022, Gold was a director and the executive director of AFLDS. *Id.* at ¶ 10. In her role as executive director, Gold authorized the hiring of employees, developed and supervised AFLDS' charitable

---

[2] Plaintiff intends to file within twenty-four hours of filing this motion additional declarations under penalty of perjury that corroborate the verified factual allegations set forth here and in the Verified Complaint (DE 1).

programs, developed and managed partnerships with other organizations, oversaw fundraising activities, and oversaw communications with program participants, government officials, and the general public. *Id.* at ¶ 10. Plaintiff Joseph Gilbert is the AFLDS Chairman of the Board, Chief Operating Officer, and Director of Strategy. *Id.* at ¶ 11. AFLDS has two other current board members – Jurgen Matthesius and Richard Mack.

## I.   Gold Has Misused AFLDS' Charitable Funds.

As set forth in the Verified Complaint, beginning at least as early as 2021, Gold began misusing AFLDS' funds for her own personal use and those in her circle. For example, she purchased a $3,600,000 home in Naples, Florida (the "Naples Home") using AFLDS funds. *Id.* at ¶ 12. She also rented a home for her friends, her personal assistant and security guard (employees of AFLDS) all without authorization or approval of the Board of Directors. *Id.* at ¶¶ 14, 16. Gold currently lives in the Naples home with John Strand rent free and her friends live in the other home rent free. *Id.* at ¶¶ 14, 17. Gold pays a personal housekeeper over $5,000 a month and a personal security officer $12,000 a month (all with AFLDS funds). *Id.* at ¶ 16. For months, she has spent $50,000 per month on AFLDS credit cards for her own personal expenses. *Id.* at ¶ 16.

Gold also purchased three vehicles including a Mercedes Benz Sprinter van, a Hyundai Genesis, and a GMC Denali, using AFLDS funds for her own personal

transportation needs. *Id.* at ¶ 15. On at least two occasions, Gold flew on private planes using AFLDS funds without approval or authorization from the Board of Directors. *Id.* at ¶ 17. One of those trips exceeded $100,000. *Id.* at ¶ 17.

## II. Gold Resigned from the AFLDS Board of Directors and as Executive Director.

On February 2, 2022, at an AFLDS Board of Directors meeting, Gold resigned from AFLDS' Board so that she could devote time and energy to her vision of opening health and wellness centers nation-wide. *Id.* at ¶ 19. The Board unanimously voted to accept Gold's resignation, voted Mr. Gilbert into the Chairman position, Amy Landau as the Executive Director, and the remaining board members as Jurgen Matthesius, and Richard Mack. *Id.* at ¶ 19. A copy of the Minutes of the meeting of the AFLDS Board of Directors is attached hereto as **Exhibit 7**.[3]

The evidence that Defendant Gold resigned from the AFLDS Board is unmistakable. For example, in an e-mail that Gold wrote to Plaintiff Gilbert on March 22, 2022, Gold confirmed she had resigned when she stated "In my role as marketing consultant for AFLDS, as well as the Founder of AFLDS" and stated "I would like to ask the Chairman of the Board of AFLDS," and "[a]s marketing consultant, I no longer have the authority to solve this issue." A copy of this

---

[3] Exhibits 1 through 6 are attached to the Verified Amended Complaint, and are also attached here as **Exhibits 1** through **6**, for convenience. Exhibits to this Motion that were not included with the Verified Complaint begin with Exhibit 7.

correspondence is attached hereto as **Exhibit 8**. Two months later, on or about May 22, 2022, Gold posted a comment on an email to AFLDS' inside and outside counsel in which she commented that she was no longer on the AFLDS Board. "I am not the Chairman of the Board – have not been on the Board for many months. I am not sure why this is incorrect." A copy of Dr. Gold's email dated May 22, 2022, with the referenced comment is attached hereto as **Exhibit 9**. This statement from Defendant Gold was in response to information needed for her criminal pre-sentencing report, in connection with her January 6 appearance at the U.S. Capitol.

Returning to the February 2, 2022 Board meeting: Discussion was held about Gold and AFLDS entering into a consulting agreement so that Gold could continue as the "face" of AFLDS and using her marketing skills to raise money for AFLDS. DE 1 at 20. The Board voted to have Mr. Gilbert negotiate the consulting agreement with Gold. *Id.* at ¶ 20. During the negotiations of the consulting agreement, Gold sought from AFLDS a "signing bonus" of $1.5 million and $50,000 monthly as a consulting fee. *Id.* at ¶ 21. Under that agreement, GoldCare (discussed below) was also to be granted, at no cost, private workspace and accommodations at the Naples Home. *Id.* at ¶ 21.

After Gold resigned from the Board, and in keeping with such consulting agreement, she created a for-profit business called GoldCare Marketing Services LLC ("GoldCare") to pursue the creation of health and wellness centers. *Id.* at ¶ 22.

After doing so, through her influence, Gold began diverting numerous AFLDS employees who were paid by AFLDS to work at GoldCare, using AFLDS's charitable resources to pay their business salaries – and with them doing little to no work for AFLDS. *Id.* at ¶ 22.

### III.    Gold Has Tortiously Interfered with AFLDS' Relationships and Illegally Attempt to and Has Seized Control of the Organization.

On June 22, 2022, Gold was sentenced to serve 60 days in federal prison after pleading guilty to a misdemeanor charge of unlawfully entering and remaining in a restricted area of the U.S. Capitol on January 6, 2022. *Id.* at ¶ 23. While Gold served her prison sentence, Plaintiff Joseph Gilbert, the Board Chairman and Director of Strategy, stepped into day-to-day operations to help AFLDS run smoothly during Gold's absence. *Id.* at ¶ 24. By that time, the Board had become aware of Gold's uses of AFLDS funds and hired a forensic auditor, obtained a compensation study, and had its outside accounting firm begin a financial audit in order to determine what next steps should be taken with regard to Gold's use of AFLDS funds for her personal use. *Id.* at ¶ 24.

Gold was released from prison on September 9, 2022 and continues to be under supervised release. *Id.* at ¶ 25. Upon Gold's release, Mr. Gilbert, as Chairman of the AFLDS Board, advised Gold of the steps the Board had taken in her absence to look into her use of charitable funds for personal purposes and the steps it would need to take as a result, for corrective action both for AFLDS's and her own good in

light of AFLDS's charitable nature. *Id.* at ¶ 25. Although Gold feigned understanding and acceptance of the steps AFLDS would need to take, it became evident shortly thereafter that Gold would do anything but accept what was in the best interests of AFLDS, its donors, employees, and mission. *Id.* at ¶ 26. Gold wanted to take back control of AFLDS and restore herself into a leadership role with the organization. Indeed, even though she had no role other than as a consultant, Gold began directing AFLDS employees in different ways in attempts to learn information and seize control. *Id.* at ¶ 27. She could have asked to be elected back to the Board, but she never did.

Instead, on October 4, 2022, Gold sent an email addressed to "the AFLDS Board of Directors," identifying Pastor Jurgen Matthesius and Richard Mack, in which she alleged that the third Board Member, Plaintiff Mr. Gilbert, had engaged in wrongdoing in his role with AFLDS. *Id.* at ¶ 28. In that email, Gold demanded that the Board take certain steps to essentially remove Mr. Gilbert from the Board and investigate her allegations. *Id.* at ¶ 28. The Board responded to Gold's allegations by retaining counsel to investigate her allegations thoroughly. *Id.* at ¶ 29. However, as soon as this investigation began, Gold began threatening the Board, AFLDS' counsel, and employees that she would interfere with AFLDS donors, to persuade them not to make donations to AFLDS if her demands were not met. *Id.* at ¶ 29. During this time, Gold continued to participate in speaking engagements

representing AFLDS in public forums. *Id.* at ¶ 29. AFLDS representatives learned that Gold falsely told donors that Mr. Gilbert had engaged in financial improprieties, ethical violations, and corruption. *Id.* at ¶ 29.

Beginning in October 2022, Gold has interfered with, sought to seize control of, and has ultimately taken control of AFLDS in the following manner and by the following actions:

- On October 12, 2022, Gold sent the Executive Director and her personal assistant, Lisa Andrzejewski, to a Board meeting to read a demand letter by Gold that each member of the Board resign immediately. That letter also threatened each Board Member with litigation and exposure "by name and location to the public" if they did not immediately resign from their positions as board members. *Id.* at ¶ 30, DE 1-1.

- In response to requests that Gold refrain from disparaging board members or discussing her allegations or the investigation into those allegations with donors, Gold advised AFLDS' counsel, among other things, that she would do what she needed to do and that AFLDS donors she had been in touch with are "aware that their monies, which they donated for specific reasons I promised to guard, are at risk." She also stated that whether she disparaged Mr. Gilbert in public depended upon him resigning from his position on the Board. DE 1 at ¶ 30, DE 1- 2.

- On October 31, 2022, without the authorization of the Board, Gold sent a letter on AFLDS' letterhead, fraudulently signing her name as the "Chairman and President of Free Speech Foundation" through which AFLDS operates as a d/b/a, to Mr. Gilbert asserting that he had committed ethical violations and that he was recused from the Board.  DE 1at ¶ 30. A copy of this correspondence is attached hereto as **Exhibit 10**.

- On October 31, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, fraudulently signing her name as the "Chairman and President of AFLDS," to AFLDS outside counsel, Wagenmaker & Oberly, purported to terminate its representation of AFLDS. DE 1 at ¶ 30, DE 1-3.

- On October 31, 2022, without the authorization of the Board, Gold caused a 2022 Annual Report to be filed with the Arizona Corporation Commission, in which she represented herself to be "CEO and Chairman of the Board of Directors of Free Speech Foundation, through which AFLDS operates as a d/b/a, A copy of this 2022 Annual Report is attached hereto as **Exhibit 11**.

- On November 1, 2022, without the authorization of the Board, Gold sent a letter to the AFLDS employees which, among other things, accused Mr. Gilbert of "improper financial dealings" and falsely asserted that she was the Chairman and President of AFLDS. DE 1 at ¶ 30, DE 1-4.

- On November 2, 2022, without the authorization of the Board, Gold entered the Microsoft Teams application used by ALFDS employees and advised the employees falsely, among other things, that she was the "legitimate Chairman of the Board and President" and that Mr. Gilbert had been recused from the Board and no authority to act on behalf of AFLDS. She also advised that employees were not to take any orders other than from her, the President or from the Executive Director Lisa Andrsejewski (whose employment had been terminated by the AFLDS Board). *Id.* at ¶ 30.

- On November 2, 2022, without the authorization of the Board, Gold advised AFLDS' treasurer not to abide by directions from the Board of Directors regarding funds or the entity's bank accounts and payments. *Id.* at ¶ 30. AFLDS' treasurer is Troy Brewer, CPA. In his email message to Gilbert and AFLDS General Counsel, attached hereto as Exhibit 18, Brewer advised that he could not transfer funds from an AFLDS account, notwithstanding calls to the Bank, because Gold  is the only authorized person. Additionally, Treasurer Brewer has refused to abide the instructions of the Board or the Executive Director, stating he is conflicted and does not know to whom he should listen.

- On November 2, 2022, without the authorization of the Board, Gold directed AFLDS employees to seize control of AFLDS' electronic mail, website domain name systems ("DNS"), and other electronic databases, and lock certain employees out of these systems. DE 1 at ¶ 30. *See also* **Exhibit 12**, attached hereto.

- On November 3, 2022, without the authorization of the Board, Gold purportedly on behalf of AFLDS, and identifying herself as the "Chairman and President of AFLDS," released a press release that reported she had

"resumed" her role as Chairman and President of AFLDS and repeated Gold's allegations against Mr. Gilbert that she announced to the AFLDS employees. DE 1 at ¶ 30, DE 1-5.

- On November 3, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, signing her name as the "Chairman and President of AFLDS," to AFLDS' in-house counsel advising her that she was suspended without pay for violating Gold's order that AFLDS employees disregard requests from the Board. DE 1 at ¶ 30, DE 1-6.

- On November 4, 2022, one of AFLDS' employees wrote an email to Plaintiff Gilbert, the subject of which was "AFLDS Takeover," in which he informed Mr. Gilbert that Defendant Gold's Executive Assistant at GoldCare had attempted to take over AFLDS' "entire Microsoft tenant, and we'll lose complete access to all of it [i.e., organizational emails and related communications] . . . unless the legal team interjects."[4] A copy of this correspondence is attached hereto as **Exhibit 12**.

- On November 3, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, signing her name as the "Chairman and President of Free Speech Foundation" through which AFLDS operates as a d/b/a, to Gilbert purporting to terminate his position with AFLDS, and asserting her own role as "Founder, current Chairman of the Board and current President of the Free Speech Foundation and of America's Frontline Doctors." A copy of this correspondence is attached hereto as **Exhibit 13**.

- On November 7, 2022, without the authorization of the Board, Gold sent a letter on AFLDS letterhead, signing her name as the Chairman and President of Free Speech Foundation, through which AFLDS operates as a d/b/a, to AFDS' employees, the subject of which was "Memorandum of Confirmed Leadership and Terminated Persons," in which she advised the employees to ignore communications from Plaintiff Gilbert, the Chairman of the Board of AFLS, Lauren Bradford, the general counsel for ALFDS, and others. A copy of this correspondence is attached hereto as **Exhibit 14**.

---

[4] "A Microsoft 365 tenant is a dedicated instance of the services of Microsoft 365 and your organization data stored within a specific default location." https://learn.microsoft.com/en-us/microsoft-365/solutions/tenant-management-overview?view=o365-worldwide (last visited on November 8, 2022).

Furthermore, Gold has focused her vitriol on Gilbert's activities that are separate from AFLDS. On November 7, 2022, Mr. Gilbert learned that Gold's personal assistant, Lisa Andrzejewski, made allegations of purported financial improprieties concerning transactions with AFLDS to the media outlet through which, until Gold's assistant defamed him, Gilbert broadcast a podcast on a weekly, or more frequent, basis. A copy of correspondence to Gilbert from counsel for American Media Periscope is attached hereto as **Exhibit 15**.

Gold's false statements regarding her authority and her false statements concerning Gilbert, the rightful Chairman of the Board, have served to confuse, intimidate staff, causing them to quit.  For example, on November 7, 2022, the Client Services Manager and Billing/Donation Coordinator resigned "due to the infighting and accusations of misappropriation of AFLDS donation funds." This former employee elaborated

> [d]ue to the accusations of mishandled funds, and the rumors of bullying and threats of termination, I no longer in good conscience can be associated with this organization. We have been pitted against each other and have been indirectly asked to pick a side. I have lost trust in the whole organization and don't know who to trust or believe. . . . The hard-working people at AFLDS have been kept in the dark about people being terminated and who are in leadership positions, not to mention the rumors of leadership positions being paid absurd amounts of money for salaries.

A copy of this employee's resignation letter is attached hereto as **Exhibit 16**. Reflecting upon the services the American people are asking for from AFLDS, this employee lamented that all she is doing under the current circumstances is cancelling donors' charitable contributions. "I don't feel that at this point we are providing any of those services, except I am able to help people cancel their donations." *Id*.

## ARGUMENT

Plaintiffs seek a temporary restraining order to prevent Gold from taking further actions that will cause irreparable damage to AFLDS, a Section 501(c)(3) charitable organization. The Court should enter a TRO where the moving party establishes the following four elements: (1) a substantial likelihood of success on the merits; (2) that the TRO is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the TRO would cause the other litigant; and (4) that entry of the TRO would serve the public interest." *Consumer Energy Solutions, Inc.*, 2017 U.S. Dist. LEXIS 12223, at 6-7 (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005)).

Plaintiffs satisfy all four elements.

## I.   Plaintiffs' Claims Are Substantially Likely to Succeed on the Merits.

In their Verified Complaint, Plaintiffs have asserted claims for fraud, conversion, tortious interference, breaches of fiduciary duty, and defamation. As set

forth in the factual section above, Gold's actions permit Plaintiffs to meet all of the elements of each of these claims.

### Fraud

A fraud claim can be established if Plaintiffs prove Gold (a) made a knowingly false statement of material fact, (b) with the intent to induce others to rely on her statement, and (c) that caused damage to Plaintiffs. *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp. 2d 1364, 1369 (M.D. Fla. 2008). Plaintiffs are likely to succeed on the merits of their fraud claim because the public and private record are clear: Gold has held herself out – in speeches, letters, and notifications – as the Chairman of the Board and President of AFLDS. These statements are demonstrably false based on board meeting minutes and other documents in Plaintiffs' possession. Gold made these false statements, among others, in order to get AFLDS staff to take steps on her behalf instead of actions on behalf of the organization itself and its rightful Board in her ongoing attempts to take over AFLDS. AFLDS has been harmed by Gold's false statements because employees have been intimidated by her and refused to take direction from the rightful Board, causing certain employees to quit their jobs and others to refuse to do their jobs in fear. These actions have paralyzed AFLDS' mission.

### Conversion

Conversion is an intentional tort that includes the following elements: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Salerno v. Fla S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) (quoting *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013)). As discussed above, Gold has wrongfully asserted dominion over AFLDS' employees, resources, funds, business relationships, information technology, and donor relationships. She has used AFLDS funds to finance her personal life by, among other things, buying a $3.6 million home, three luxury vehicles, private services, and flying on private jets. Gold has directed employees not to listen to the Board and to take direction from her, including her instructions s not to disperse ALFDS funds. Gold has wrongfully taken over the information technology services and removed access to those services to the Board of Directors and AFLDS staff members. Gold has advised donors not to donate to AFLDS. None of these belongs to her personally and her exercise of dominion over them is inconsistent with the fact that she is not a director, officer, or employee of AFLDS and has no authority to assert control over AFLDS' property. Based on the evidence AFLDS has already accumulated, as set forth in its Verified Complaint and this Motion, it is likely to succeed on the merits of this claim.

### *Tortious Interference*

"To establish a claim for tortious interference with a business relationship under Florida law, the plaintiff must establish the following elements: "(1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship'" *Duty Free Ams*., 797 F.3d at 1279 (alterations in original) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc*., 647 So.2d 812, 814 (Fla. 1994))." *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 U.S. App. LEXIS 21039 (11th Cir. 2022).

As Plaintiffs have alleged in the Verified Complaint, Gold has tortiously interfered with multiple current relationships between ALFDS and its employees, donors, and prospective donors. As an example, AFLDS employs an individual in a financial role to handle AFLDS' finances, payroll, and other financial matters including relationships with banks. Gold is aware of this employee's relationship with AFLDS. In the last two weeks, Gold has advised this employee that she should not take direction from the Board of Directors and should only follow her instructions when it comes to the release of funds, communication with banks, and payment of employees. *See* Exhibit 18. These actions have caused AFLDS not to be able to disperse funds as needed or secure its funds. Gold has no authority to direct

16

this employee or any other employee. She is not a director, and officer, or an employee of AFLDS. Based on her actions, AFLDS is likely to succeed on its claim for tortious interference with its employment relationships.

Similarly, Gold has directed an employee of her limited liability company, Gold Care, to submit a ticket to Microsoft on behalf of AFLDS in order to make changes to AFLDS' information technology and email systems. Gold knows AFLDS has a business relationship with Microsoft, a third-party vendor, and has taken intentional steps to interfere with that relationship to the detriment of AFLDS' mission and purpose as well as donors. AFLDS is likely to succeed on its claim for tortious interference with business relationships.

### *Breaches of Fiduciary Duty*

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006). During her time as a director of AFLDS (until her resignation on February 2, 2022), Gold owed fiduciary duties of care, loyalty, and obedience to AFLDS. Notwithstanding these duties, Gold engaged in numerous excess benefits transactions in violation of Internal Revenue Code §§ 501(c)(3) and 4958. In so doing, Gold engaged in corporate waste and self-dealing. As fully described elsewhere, Gold bought homes, cars, plane rides, and personal services with

17

AFLDS' charitable funds without the authorization of the Board, which both wasted AFLDS' funds and put AFLDS at risk for penalties under the Internal Revenue Code. Based on Gold's actions, AFLDS' is likely to succeed on the merits of its claims for breaches of fiduciary duty.

### Defamation

Plaintiff Gilbert has asserted a claim for defamation against Gold. "The elements of a defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to [the] plaintiff." *Border Collie Rescue*, 418 F. Supp. 2d at 1348. Here, Gold sent letters to AFLDS staff and released a press release purportedly on behalf of AFLDS publishing false statements about Mr. Gilbert, which has caused Mr. Gilbert great reputational harm inside of AFLDS and in the public realm. In Gold's letter to employees dated November 1, 2022, she stated that "Joey Gilbert has repeatedly acted unethically, exhibiting a clear and longstanding patter of inappropriate and damaging behavior. The violations are severe, including numerous financial dealings, all while he is publicly threatening all of you – the people who do the work – with pay cuts and termination." (DE 1-4.) On November 2, 2022, Gold sent a second letter to employees stating that "Mr. Gilbert has been recused from his role on the Board of Directors pending an internal investigation to review documented allegations filed against him. Effective immediately he has absolutely no authority

to communicate directives or instructions of any kind to anyone working or volunteering at AFLDS." A copy of Gold's November 2, 2022 letter is attached hereto as **Exhibit 17**.

On November 3, 2022, Gold issued a press release, purportedly on AFLDS' behalf in which she falsely stated that Gilbert had "repeatedly acted unethically, exhibiting a clear pattern of inappropriate and damaging behavior…including numerous instances of self-dealing and threats made to employees of financial retaliation and termination if they failed to comply with his demands." (DE 1-5)

Gold's malicious interference has extended beyond Gilbert's activities on behalf of AFLDS.  On November 7, 2022, Mr. Gilbert learned that Gold's personal assistant, Lisa Andrzejewski, made allegations of purported financial improprieties concerning transactions with AFLDS to the media outlet through which, until Gold's assistant defamed him, Gilbert broadcast a podcast on a weekly, or more frequent, basis.

These statements were knowingly false and each of them has caused Gilbert reputational harm. Based on these facts, Gilbert is likely to succeed on the merits of his claim for defamation.

## II.    A Temporary Restraining Order Is Necessary to Prevent Irreparable Injury.

Where an injury is actual and imminent, a temporary restraining order is necessary and appropriate. *See Tradewind Invest, LLC v. Elite Catch Seafood, LLC,*

2020 U.S. Dist. LEXIS 264309, *4-5 (S.D. Fla. May 22, 2020). An injury is irreparable if it "cannot be undone through monetary remedies." *Id*. "The loss of intangible assets, such as harm to reputation, can constitute irreparable injury. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). This is because "harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars." *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc*., 336 F.3d 801, 805 (8th Cir. 2003)." *Allan Block Corp. v. E. Dillon & Co*., 2005 U.S. Dist. LEXIS 13566, *20 (D. Minn. July 1, 2005).

The full extent of the harm Gold has caused AFLDS is not yet known because she continues to operate clandestinely through staff and other third parties. What AFLDS knows at this point, however, is that employees are leaving, Gold has gotten into and taken over the information technology systems, donors and vendors are afraid to engage with AFLDS due to Gold's conduct and the information she has published about Gilbert and the organization. She has also prevented AFLDS from distributing monies, and has issued a false press release. Gold continues to undermine and sabotage AFLDS' operations, and causes great disruption, confusion, and fear among employees and donors alike. Gold is causing harm to AFLDS' reputation and goodwill, its donor base, and its ability to bring in additional money to accomplish its charitable purposes.

Gold must be stopped before she destroys AFLDS altogether.

III.    **Any Threated Injury to Defendant Outweighs the Harm a TRO Would Cause Defendant.**

Given that Gold has no authority whatsoever to act on AFLDS' behalf, no harm will befall if she is stopped and a temporary restraining order is entered against her. Gold resigned on February 2, 2022 and indisputably has no position with AFLDS. Thus, to prevent her from interfering with AFLDS' operations, employees, and relationships outweighs any harm she will sustain as a result of the TRO.

IV.    **Entry of a TRO Would Serve the Public Interest.**

AFLDS is a nonprofit organization that collects and uses funds for charitable purposes. For this reason, an entry of a temporary restraining order to prevent Gold from continuing to spend charitable funds for her own personal purposes, sabotaging AFLDS' purposes and mission, and harming employees of the organization serves the public interest. Permitting her conduct to continue unchecked causes great harm to the public trust in nonprofit organizations designed to serve the public.

**CONCLUSION**

Pursuant to Fed. R. Civ. P. 65 and L.R. 6.01, Plaintiffs, AFLDS and Joseph Gilbert, by and through the undersigned counsel, hereby move this Court for a Temporary Restraining Order restraining and enjoining Defendant, Simone Gold, from:

1.  Holding herself out as a representative, officer or director of AFLDS to AFLDS staff, AFLDS donors, and the public, including, without limitation,

from communicating with any of AFLDS' banking partners relating to AFLDS or AFLDS' assets;

2. Communicating with current AFLDS employees about matters concerning its activities, this lawsuit, and the claims asserted in this lawsuit;

3. Accessing AFLDS' electronic mail, website domain name systems, electronic databases, and other internet and intranet systems;

4. Accessing and using AFLDS' funds, including credit cards, real estate and other properties;

5. Defaming or disparaging Joseph Gilbert and others associated with AFLDS; and

6. Directing any person to engage in any of the above activities on her behalf; and

7. for such other relief as this Court deems proper.

## RULE 65(b)(1)(B) CERTIFICATE

The undersigned certifies that Plaintiffs gave notice by e-mail communication to Defendant and Defendant's last known attorney of all pleadings and papers filed in this action, as well as several cease and desist letters regarding the conduct that is the subject of this Motion. The undersigned also certifies that a copy of this Motion is being sent to Plaintiff's attorney via email tonight after it is filed with the Court.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 8th day of November 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.   I further certify that a true and correct copy of the foregoing was served by mail to Simone Gold, 808 Myrtle Terrace, Naples, FL 34103.

/s/ *Joshua D. Lerner*

Joshua D. Lerner
Florida Bar No. 455067
E-mail: jlerner@rumberger.com,
docketingmiami@rumberger.com,
and jlernersecy@rumberger.com
RUMBERGER, KIRK & CALDWELL,
P.A.
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

Samantha D. Duke
Florida Bar No. 091403
Email: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133

*Attorneys for Plaintiffs*

## VERIFICATION

I, Joseph Gilbert, hereby declare as follows:

I am a plaintiff in this action, and I am Chairman of the Board of Directors, Chief Operating Officer, and Director of Strategy of Plaintiff Free Speech Foundation, Inc. d/b/a America's Frontline Doctors, Inc. I have read the foregoing verified motion for temporary restraining order and preliminary injunction. Based upon my personal knowledge and upon documents maintained by Free Speech Foundation, Inc. d/b/a America's Frontline Doctors, Inc. in the regular course of its operations, as well as upon discussions with and reliance upon other directors, officers and employees of the foundation, the facts stated in the foregoing verified motion for temporary restraining order and preliminary injunction are true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of pedury that the foregoing is true and correct.

Executed this _8th_ day of November 2022.

_Joseph Gilbert_
Joseph Gilbert

24