UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

FREE SPEECH FOUNDATION,
INC. d/b/a AMERICA'S
FRONTLINE DOCTORS, an
Arizona nonprofit corporation,
and JOSEPH GILBERT,

     Plaintiffs,

v.                           Case No.:  2:22-cv-714-SPC-NPM

SIMONE GOLD,

     Defendant.

_____/

**DEFENDANT SIMONE GOLD'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1)**

1

Defendant Dr. Simone Gold ("Dr. Gold") hereby moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.

As set forth below, this Court lacks subject matter jurisdiction over this matter because there is no diversity of citizenship. Plaintiffs' Complaint alleges that Plaintiff Free Speech Foundation, Inc. d/b/a America's Frontline Doctors ("AFLDS") has its principal place of business is in Arizona. Not true. That is only a mailing address: a UPS Store mailbox. AFLDS's actual principal place of business is in Naples, Florida, where AFLDS's operation is run from a physical campus that includes a headquarters, a leased space called the "Team House," and a media production studio, and where a large number of the company's director-level workers and agents live and work.

In addition, the Complaint facially fails to meet the requirements for diversity jurisdiction because it does not allege any facts supporting its allegation that the amount in controversy requirement has been met. Plaintiffs' bare, conclusory allegations that their damages are "in excess of $75,000" are legally insufficient to invoke diversity jurisdiction.

These two issues each independently necessitate dismissal of the Complaint for lack of subject matter jurisdiction.

This Motion is supported by the Declaration of Dr. Simone Gold ("Gold Decl."), Exhibit 1 hereto; the Declaration of George Wentz ("Wentz Decl."),

Exhibit 2 hereto; and the Declaration of Liza Andrzejewski ("Andrzejewski Decl."),

Exhibit 3.

## I.    COMPLETE DIVERSITY OF CITIZENSHIP IS LACKING.

District courts should "initiate an inquiry into [their] subject-matter

jurisdiction whenever [they] become concerned that it may not exist." *Gilchrist v.*

*State Farm Auto. Mut. Ins. Co.*, 390 F.3d 1327, 1330 (11th Cir. 2004). In this matter,

Plaintiffs AFLDS[1] and Joseph Gilbert (collectively, "Plaintiffs") invoked only

diversity jurisdiction as a basis for filing in this Court. [Compl. ¶ 4].

Diversity jurisdiction requires that the matter in controversy exceed the sum

or value of $75,000.00 <u>and</u> that the lawsuit be between citizens of different states.

28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires complete diversity; every

plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*,

154 F.3d 1284, 1287 (11th Cir. 1998). In determining citizenship, a natural person

is a citizen of the state where he or she is domiciled. *McCormick v. Aderholt*, 293

F.3d 1254, 1257 (11th Cir. 2002). A corporation, meanwhile, is a citizen of (1) every

---

[1] The parties are in the midst of a dispute about control of AFLDS—Plaintiff Joseph Gilbert is attempting to seize control of the entity from its founder, Dr. Gold, in retaliation for and to distract from concerns Dr. Gold raised about Mr. Gilbert's financial improprieties. Putting the cart before the horse, Plaintiff Joseph Gilbert apparently decided to bring claims on behalf of the entity—falsely alleging all kinds of misdeeds by Dr. Gold—before the control issue has been decided. But a Rule 12(b)(1) motion is no place to argue about the merits. Accordingly, for purposes of this motion, we will assume *arguendo* that AFLDS is actually a plaintiff to this action.

state where it is legally incorporated and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Plaintiffs bear the burden of establishing that this Court may exercise jurisdiction over their claims. *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." (citations omitted)). Absent proof, "it is presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, U.S. 375, 377 (1994).

Plaintiffs cannot meet this burden. Plaintiffs alleged complete diversity, contending that AFLDS is a citizen of Arizona because its principal place of business is, allegedly, located in Tucson, Arizona [Compl. ¶ 6], and further contending that Dr. Gold is a citizen of Florida. [Compl. ¶ 7]. It is true that AFLDS is a citizen of Arizona (because it is incorporated there, not because, as Plaintiffs incorrectly allege, its principal place of business is there), and it is true that Dr. Gold is a citizen of Florida. But complete diversity does not exist here because Arizona is not the only state where AFLDS is a citizen.

As discussed below, first, Plaintiffs cannot prove AFLDS maintains its principal place of business in Arizona—that is merely a mailing address, and no AFLDS workers live or work in Arizona.[2] Second, AFLDS's actual principal place

---

[2] For purposes of clarity, Dr. Gold notes that Section I of this Motion is a factual

of business and campus is in Naples, Florida, and it is accordingly a citizen of Florida. And, as Plaintiffs allege, Dr. Gold is a citizen of Florida. There is, accordingly, a lack of complete diversity.

What constitutes a corporation's "principal place of business" under 28 U.S.C. § 1332(c)(1) is governed by the judicially-created "nerve center" test. In *Hertz*, the Supreme Court adopted the "nerve center" test as the uniform approach for determining a corporation's principal place of business. 559 U.S. at 78. The test dictates that a corporation's principal place of business is located where the nerve center of the corporation's operations are located. *Id.* at 92–93. This is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* Most often, but not always, the nerve center is the corporation's headquarters. *Id.* at 93.

Corporations can be uniquely structured and managed depending on their specific objectives and needs. For example, operational control of a corporation may be divided over several offices, or management may permit wide-scale remote work.

---

attack on diversity jurisdiction. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where defendants assert a factual attack, the district court can "weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

*Id.* at 95–96. And a corporation's principal place of business is not a state; rather, "it is a place *within* a [s]tate." *Hertz*, 599 U.S. at 93 (emphasis added). In light of this reality, the Court in *Hertz* articulated that the nerve center test is just as elucidating in the "era of telecommuting" as ever before, because the facts will still point to a single principal place of business. *Id.*

As a result, the essence of the *Hertz* nerve center test focuses on "measuring the total amount of business activities that the corporation conducts [in a State] and determining whether they are 'significantly larger' than the next-ranking State." *Hertz*, 559 U.S. at 93; *see also, e.g.*, *WM Mobile Bay Envtl. Ctr., Inc. v. City of Mobile*, 2022 WL 2784606, *2 (11th Cir. 2022) (finding that a company was headquartered in Mississippi because it made major and day-to-day decisions there, even though it did not have a license to operate in Mississippi and did not transact business there).

Applying the *Hertz* test here, and "measuring the total amount of business activities" in a state, Naples, Florida is the clear nerve center for AFLDS when compared to Arizona (or anywhere else). AFLDS does not have any operations in Arizona. It only has two connections to Arizona: (1) AFLDS was organized under the laws of the State of Arizona; and (2) AFLDS has a mailing address in Tucson, Arizona. [Gold Decl. ¶¶ 5, 7]. No meetings are held there; no decisions are made there. No employees or officers are located there. Only a single alleged member of

the Board of Directors may, coincidentally, live in Arizona. [Gold Decl. ¶¶ 8, 20]. In fact, Dr. Gold—the Founder of AFLDS—only chose to incorporate AFLDS in Arizona because she considered moving to Arizona—but she ultimately did not, because she instead moved to Florida. [Gold Decl. ¶ 5].

Thus, the Complaint's allegation that AFLDS's principal place of business is in Arizona lacks merit, when AFLDS's *de minimus* Arizona presence is compared to its substantial operations in Naples, Florida. The facts are overwhelming— AFLDS's operations are conducted primarily from within Florida:

- AFLDS has three pieces of real property in Naples, Florida that, together, are considered a campus. [Gold Decl. ¶ 12; Wentz Decl. ¶¶ 6-7]. First, AFLDS has its headquarters on Myrtle Terrace Road in Naples, Florida (the "Headquarters House").[3] [Gold Decl. ¶ 13; Andrzejewski Decl. ¶ 6]. Frequent meetings are held at the Headquarters House, for senior workers and directors, and vital fundraising and media functions are conducted from that property. [Gold Decl. ¶¶ 13-14; Wentz Decl. ¶ 8; Andrzejewski Decl. ¶ 6]. Second, AFLDS has a nearby rental house located at 799 104th Avenue North, Naples, Florida, where officers and directors frequently make

---

[3] The precise address is omitted for security reasons. AFLDS and Dr. Gold have serious security concerns surrounding the headquarters.

decisions, and where workers conduct their day-to-day work (the "Team House"). [Gold Decl. ¶ 15; Wentz Decl. ¶ 7; Andrzejewski Decl. ¶ 5; Lease of Team House, Exhibit 8 hereto]. Third, AFLDS's most significant business operation is the creation of media content and videos, and it rents a studio for that purpose, located at 843 Unit B, 102 Avenue North, Naples, Florida [Gold Decl. ¶ 17; Andrzejewski Decl. ¶ 7; Lease of Media Studio, Exhibit 9 hereto];

- AFLDS's headquarters were established in Naples, Florida by Dr. Gold, with the consent and approval of Board member Plaintiff Joseph "Joey" Gilbert (as well as Board members Dr. Gold, Richard Mack, and Jurgen Matthesius, former Board member Amy Landau, and General Counsel Thomas Gennaro) [Gold Decl. ¶¶ 21-26; Wentz Decl. ¶ 7];

- On January 4, 2022, one day after the purchase of the Headquarters House, AFLDS issued a press release announcing the move of its operations to Naples, Florida, stating, in part: "[AFLDS] made the decision to move their headquarters and primary base of operations to the United States of Florida . . . . Within Florida, Naples is an epicenter for the modern-day freedom movement" [AFLDS Press Release (Jan. 4, 2022), Exhibit 4 hereto; see also Gold Decl. ¶¶ 21, 24];

- AFLDS registered with the Secretary of State of Florida to do business in Florida, to allow the headquarters move [Gold Decl. ¶ 11];

- The AFLDS Board of Directors specifically approved the house purchase and operational move to Florida [Gold Decl. ¶¶ 10, 26; AFLDS Meeting Minutes Approving Headquarters House Purchase, Exhibit 6 hereto];

- The Headquarters House was purchased *by AFLDS* through a wholly-owned subsidiary, Naples Freedom Headquarters, LLC, a Florida company[4] [Gold Decl. ¶¶ 21, 25; Operating Agreement (unsigned), Exhibit 7 hereto]. The Complaint inexplicably (and falsely) implies that Dr. Gold bought a personal house through a shady entity affiliated with her. Not true. AFLDS owns the house though Naples Freedom Headquarters LLC. [*Id.*; Wentz Decl. ¶ 9; Warranty Deed for Headquarters House, Exhibit 5 hereto];

---

[4] AFLDS is the sole member of Naples Freedom Headquarters, LLC, and this fact was puzzlingly omitted from the Complaint. This is one example of a serious lack of candor and truthfulness throughout the Complaint, which will be addressed in the appropriate venue. Before acting on any expedited preliminary basis, where discovery is limited and candor of the parties is crucial, the Court may wish to take judicial notice of the Nevada First Judicial Court's recent sanctions against Joseph Gilbert for filing frivolous litigation challenging Nevada's primary election. [Order Granting Def. Joseph Lombardo's Mot. for Sanctions, *Gilbert v. Sisolak et al.*, Carson City, Nev. First Jud. Dist. Ct., Case No. 22 OC 000851B (Sept. 21, 2022), attached as Exhibit 11 hereto].

- AFLDS and Joseph Gilbert knew of and approved the house purchase through Naples Freedom Headquarters LLC. [Gold Decl. ¶ 25; Attorney-client Privileged Email Chain Discussing Headquarters House Purchase (November 23, 2021), to be filed under seal, Exhibit 10 hereto]. AFLDS's general counsel arranged formation of the entity that was the purchaser. [Gold Decl. ¶ 26].[5] The purchaser's address on the Deed for the house was Joseph Gilbert's law firm address in Reno Nevada.[6] [Gold Decl. ¶ 26];

- Plaintiffs' own recently filed affidavits demonstrate that the officers, directors, and workers consider the AFLDS-rented house in Florida (the Team House) to be the "Team House" for the AFLDS operation.

---

[5] It bears noting that many of Plaintiffs' allegations in the Complaint are stunningly false, especially those concerning the purchase and lease of the real estate, which were done with the knowledge and consent of the AFLDS Board of Directors, including Plaintiff Gilbert. Plaintiffs knew that the sole owner of the Headquarters House is Naples Freedom Headquarters, LLC, and that AFLDS is the sole owner of Naples Freedom Headquarters, LLC. [Gold Decl. ¶¶ 25-26]. The real estate and financial transactions related to the purchase of that property were arranged and supervised by Thomas Gennaro, the then-General Counsel of AFLDS, and participants in the process included at least three other attorneys working for AFLDS (Plaintiff Gilbert, Royce Hood, and Michael Gentzle), as well as other AFLDS staff including the Financial Director and Director of Security. [Gold Decl. ¶ 26]. It is unclear why Plaintiffs concealed these facts—especially given that a central focus of the Complaint is Dr. Gold's alleged misuse of the Headquarters House [Compl. ¶¶ 2, 12, 13, 16, 17, 36-39, 55-59, 60-64]. Indeed, it is possible that Naples Freedom Headquarters, LLC, not Plaintiffs, is the proper plaintiff or defendant for any claims that may exist as to the Headquarters House; that issue will require further analysis.
[6] 405 Marsh Avenue, Reno, NV 89509.

For example, (1) Paula Jo Lentz, former Communications Director, (2) Kristine Lutzo, former Executive Director, and (3) Amy Landau, former Executive Director, all specifically refer to the leased space as the "Team House." [Lentz Decl., Doc. No. 8-3, p. 2; Lutzo Decl., Doc. No. 8-5, p. 1; Landau Decl., Doc. No 8-1, p. 2];

- Dr. Gold, who oversees AFLDS's day-to-day operations and is the Chairman of the Board of Directors,[7] resides in the Headquarters House and works frequently, conducting AFLDS business, from Headquarters House [Gold Decl. ¶¶ 13-14];

- Even excluding Dr. Gold, a significant number of AFLDS senior workers live in or around Naples, Florida and frequently work from both the Headquarters House and the Team House, including Dr. Chase Bradford (Assistant Legal Director), Lauren Bradford (Legal Director), AJ Andrzejewski (Director of Security), Lisa Andrzejewski (Executive Director), John Strand (Creative Director), Frank Addelia (Director of Photography), Vicky Richter (Photographer), Amanda Schlief (Photographer), Hannah Oakes (Production Assistant), Kristy Morrell (Nutrition Director), Dr. Chris Rake (consulting doctor and

---

[7] Dr. Gold acknowledges that the composition of the Board of Directors of AFLDS is disputed and will be subject to future litigation.

media talent), Betsey Addelia (volunteer), Sarah Denis (Operations Director), Raf Denis (Assistant Director of Security), and Rafael Rolim (Information Technology Director.). Many of these individuals moved to the Naples, Florida area specifically because AFLDS's campus and headquarters were established there [Gold Decl. ¶ 28; Andrzejewski Decl. ¶ 8];

- AFLDS employee and business meetings are frequently held at the Team House in Florida [Andrzejewski Decl. ¶ 8]—a fact that was confirmed in the declarations filed by Plaintiff. For example, Paula Jo Lentz states there was an April 11, 2022 meeting at the Team House. [Lentz Decl., Doc. No. 8-3, p. 3]. Kristine Lutzo and Amy Landau state there was a February 9, 2022 leadership meeting at the Team House [Lutzo Decl., Doc. No. 8-5, p. 1; Landau Decl., Doc. No. 8-1, p. 2]; and

- Day-to-day operations are run from both the Headquarters House and the Team House, and decisions that direct and control AFLDS are made at both locations. [Gold Decl. ¶ 16; Wentz Decl. ¶ 8].

Even in an era of remote work (and with AFLDS having many affiliates throughout the country), the substantial facts here point to the AFLDS campus in Florida being the nerve center of AFLDS. Accordingly, AFLDS's principal place of

business is in Naples, Florida, and AFLDS is a citizen of Florida, which destroys diversity.

Ultimately, the lack of complete diversity of citizenship mandates dismissal of the complaint without prejudice. Fed. R. Civ. P. Rule 12(b)(1); *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331, n.6 (11th Cir. 2001) ("[A] court must dismiss a case without ever reaching the merits if it concludes that is has no jurisdiction."). Because Defendant Dr. Gold is a citizen of Florida, and Plaintiff AFLDS's principal place of business is in Florida, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

## II.   THE AMOUNT IN CONTROVERSY IS INADEQUATELY PLEADED TO SUSTAIN DIVERSITY JURISDICTION.

There is a second, independent reason that this case should be dismissed for lack of subject matter jurisdiction. Beyond diversity of citizenship, 28 U.S.C. § 1332 requires that the amount in controversy must exceed $75,000, exclusive of interest and costs. Plaintiffs have not sufficiently alleged that this requirement is met.

To determine whether a plaintiff sufficiently alleges the requisite amount in controversy, courts look to the face of the plaintiff's well-pleaded complaint.[8] *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1342 (11th Cir. 2009). Generally, alleging that the amount in controversy exceeds the

---

[8] For purposes of clarity, Dr. Gold notes that Section II of this Motion is a facial, rather than factual, attack on diversity jurisdiction.

minimum requirement "is not a particularly high hurdle to jump." *Soliman v. Pearson*, 2013 WL 554798, *1 (D. Colo. 2013). But a plaintiff is not permitted to only allege conclusory statements "that the amount in controversy is satisfied, 'without setting forth the underlying facts supporting such an assertion.'" *Packer v. Kimberley-Clark Worldwide, Inc.*, 2022 WL 2115845, *1 (M.D. Florida 2022); *see also, e.g.*, *H.R. Gibson, Sr. v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973) ("Merely asserting an amount in controversy equal to the minimum sum required does not entitle appellant to sue in federal court.").

In addition, courts are especially reluctant to find that the amount in controversy has been sufficiently pleaded when a plaintiff did not allege that the amount in controversy exceeds $75,000 "exclusive of interest and costs." *Nationwide Mutual Insurance Co. v. Dunn*, 2011 WL 184012, *2 (M.D. Penn. 2011).

Plaintiffs did not meet their jurisdictional burden with their bare, conclusory allegation that the amount in controversy exceeds $75,000. In fact, Plaintiffs alleged no factual basis as to why or how their damages exceed the requisite $75,000, nor did they assert that the amount in controversy exceeds $75,000 "exclusive of interest and costs." Plaintiff allege over and over again that they have been damaged "in an amount to be proven at trial, but in excess of $75,000." [Doc. 1, p. 11, 12, 13, 14, 15, 16, 18]. But that bare-bones, conclusory allegation is the only thing offered.

This issue is particularly (but not exclusively) notable as to the defamation

14

claim asserted by Plaintiff Gilbert. It is completely bereft of facts supporting its conclusory allegation of damages.

As a result, Plaintiffs have completely failed to allege facts that support their allegation that the amount in controversy exceeds $75,000. This is a second <u>independent</u> reason that the Court should dismiss Plaintiffs' Complaint.

## III.    Conclusion

For two independent reasons, both factual and facial, Plaintiffs' have not met—and cannot meet—their burden of proving a jurisdictional basis for bringing these claims before this Court. The Court should dismiss the Complaint for lack of subject matter jurisdiction.

<u>**Local Rule 3.01(g) Certification**</u>

Counsel Bradley A. Burns conferred with counsel for the opposing party on November 17, 2022, by telephone. The parties were unable to agree on resolution of the issues raised by this motion.

Dated: November 18, 2022

Respectfully submitted,

*/s/ Angelina M. Gonzalez*
Angelina M. Gonzalez, Esq.
Florida Bar No. 98063
**DICKINSON WRIGHT PLLC**
350 East Las Olas Blvd., Suite 1750
Fort Lauderdale, FL 33301
Tel: (954) 303-9233
Fax: (844) 670-6009
Email: agonzalez@dickinson-wright.com

Bradley A. Burns, Esq.
Arizona Bar No. 030508 (admitted *pro hac vice*)
Amanda E. Newman, Esq.
Arizona Bar No. 032462 (admitted *pro hac vice*)
**DICKINSON WRIGHT PLLC**
1850 N. Central Ave., Suite 1400
Tel: (602) 285-5000
Fax: (844) 670-6009
Email: bburns@dickinsonwright.com
Email: anewman@dickinsonwright.com
*Attorneys for Defendant Dr. Simone Gold*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Motion to Dismiss* was served using CM/ECF system on November 18, 2022, on all counsel or parties of record on the service list below.

## **SERVICE LIST**

Joshua D. Lerner
Florida Bar No. 455067
E-mail: jlerner@rumberger.com
Email: docketingmiami@rumberger.com
Email: jlernersecy@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
Brickell City Tower, Suite 3000 80 S.W. 8th Street
Miami, Florida 33130
Telephone: (305) 358-5577
Telecopier: (305) 371-7580

Samantha D. Duke
Florida Bar No. 091403
Email: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801) Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
*Attorneys for Plaintiffs*

/s/ Angelina M. Gonzalez
Angelina M. Gonzalez, Esq.
Florida Bar No. 98063

4862-2851-7694 v9 [104205-1]

17