# EXHIBIT 8

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
11/23/2022 4:32:17 PM
Filing ID 15175887

Bradley A. Burns (#030508)
bburns@dickinsonwright.com
Amanda E. Newman (#032462)
anewman@dickinsonwright.com
Adin J. Tarr (#037878)
atarr@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm Email:  courtdocs@dickinsonwright.com

*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| SIMONE GOLD, M.D., both in her individual capacity and as a director on behalf of Free Speech Foundation d/b/a America's Frontline Doctors, an Arizona nonprofit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH "JOEY" GILBERT, an individual; JURGEN MATTHESIUS, an individual; RICHARD MACK, an individual; and FREE SPEECH FOUNDATION d/b/a AMERICA'S FRONTLINE DOCTORS, an Arizona nonprofit corporation, in a derivative capacity,<br><br>    Defendants. | Case No. **CV2022-015525**<br><br>**VERIFIED COMPLAINT**<br><br>**(Declaratory Judgment, Judicial Removal of Directors, Injunctive Relief)**<br><br>**(Commercial Court Assignment Requested)** |

Plaintiff Dr. Simone Gold ("Gold" or "Plaintiff") alleges as follows for her Verified Complaint, filed both in her individual capacity and derivatively on behalf of Free Speech Foundation d/b/a America's Frontline Doctors ("AFLDS"), against Defendants Joseph "Joey" Gilbert ("Gilbert"), Jurgen Matthesius ("Matthesius"), and Richard Mack ("Mack") (collectively, "Defendants"), as well as nominal Defendant AFLDS. This is a

1

derivative action brought by Gold on behalf of AFLDS, pursuant to A.R.S. § 10-3630 *et seq.*, against AFLDS (as a nominal defendant in a derivative capacity) and against certain directors of AFLDS.

## **INTRODUCTION**

1.      This lawsuit arises from Gilbert's ultra vires acts and unauthorized seizure of a nonprofit organization founded and run by Dr. Simone Gold. Gilbert is an attorney in Nevada, and he is a member of the AFLDS Board of Directors. He convinced AFLDS to deposit $1.1 million dollars with him without disclosing a conflict of interest. After Gold demanded a return of the money, and she discovered and sought investigation into Gilbert's other frauds — he also likely pilfered at least tens of thousands of dollars from the nonprofit, and possibly more — and his other acts to the nonprofit's detriment, Gilbert launched a power grab of the company, in an attempt to both retaliate against Gold and obfuscate his crimes and wrongdoing.

2.      Gilbert has purported to fire half a dozen key employees, including Gold. He has threatened other employees. He has spread lies about Gold. He has continued to misuse the nonprofit, including misappropriating the $1.1 million deposited with his law firm's trust account, despite his agreement to return the money.

3.      Mack and Matthesius have supported, facilitated, and/or permitted Gilbert's malfeasance and ultra vires power grab, and Mack has engaged in his own financial misuse of the company.

4.      The nonprofit depends for its success on the continued control and association of Gold, who is its figurehead and spokesperson, and who is vital to fundraising efforts. If Defendants' conduct continues, the nonprofit's future will be compromised.

2

## JURISDICTIONAL ALLEGATIONS

5.      Plaintiff Gold is a Florida resident. She is the founder of AFLDS and is a member of its Board of Directors, the Chairman of the Board, and the President of the company.

6.      Defendant Gilbert is, on information and belief, a resident of Nevada. Gilbert is a member of the Board of Directors of AFLDS and is AFLDS' former Director of Strategy.

7.      Defendant Matthesius is, on information and belief, a resident of California. Matthesius is a member of the Board of Directors of AFLDS.

8.      Defendant Mack is, on information and belief, a resident of Arizona. Mack is a member of the Board of Directors of AFLDS.

9.      Nominal Defendant ALFDS is an Arizona nonprofit corporation with its principal place of business in Naples, Florida.

10.      This is a derivative action, brought pursuant to A.R.S. § 10-3630 *et seq.*, related to AFLDS, an Arizona nonprofit corporation.

11.      This action concerns the individual Defendants' misuse of an Arizona nonprofit corporation. Plaintiff seeks a declaration establishing the directors of that corporation, as well as injunctive relief and removal of directors who have misused that corporation.

12.      Jurisdiction and venue are proper in this Court.

13.      Inter alia, in rem jurisdiction exists because this action involves ownership and control of an Arizona nonprofit corporation.

14.      Plaintiff seeks relief that qualifies for standard discovery as described for Tier 2, pursuant to Arizona Rule of Civil Procedure 26.2(c)(3).

# **FACTUAL BACKGROUND**

**A.      Formation and Purpose of AFLDS**

15.     Gold is both a medical doctor (an experienced emergency physician) and a lawyer. She founded AFLDS as an Arizona nonprofit corporation in June 2020.

16.     AFLDS's mission and work includes advocating for medical and healthcare issues, combatting media censorship of medical-related information, and supporting medical freedom and civil liberties around healthcare issues. AFLDS offers an array of online content related to those issues.

17.     Since its formation, AFLDS has been successful in raising funds for its mission and work. Gold, in particular, has raised more than $25 million in donations for the organization since its formation.

18.     More than 2,000 medical professionals have associated with AFLDS, referring to themselves as "America's Frontline Doctors."

19.     AFLDS has amassed more than 1 million subscribers to its online content in the two years that it has existed.

20.     AFLDS' success is built on the personality of Gold, who rose to public prominence in 2020 as a critic of the response to the COVID-19 pandemic.

21.     Gold is the "face" of AFLDS.

22.     Gold frequently engages in public speaking on topics related to AFLDS' mission and work.

23.     Indeed, multiple substantial donors to AFLDS, including one who donated $5 million to AFLDS in August 2022 and one who has donated $500,000 since 2020, have expressed that they gave to AFLDS solely <u>because</u> Gold was at the helm of the organization.

24.     Furthermore, medical professionals associated with AFLDS, including AFLDS's physician liaison and physician-pilot liaison, have expressed that they associated with AFLDS, and remain associated with AFLDS, because of Gold's connection to the organization.

25.     The vast majority of AFLDS's workers, who see themselves as "freedom fighters," have likewise indicated that they remain working for AFLDS because of Gold's connection to the organization.

**B.     The Board of Directors of AFLDS**

26.     In 2020, shortly after she founded AFLDS, Gold was appointed as a director, Chairman of the Board, and President of the organization.

27.     Gold remains in those roles to this day.

28.     In addition to Gold, AFLDS has had other Board members over time.

29.     Third-party Amy Landau was appointed a director of AFLDS in or about September 2020.

30.     Gilbert was appointed a director of AFLDS in or about March 2021.

31.     Mack and Matthesius were added to the Board in or about December 2021.

32.     As of early 2022, the Board of Directors for AFLDS consisted of Gold, Gilbert, Landau, Mack, and Matthesius.

**C.     The Failed Agreement for Gold to Resign from the Board**

33.     In early 2022, Gold considered the possibility of stepping down from her position on the Board of Directors, in the interest of protecting the functionality of AFLDS (including concerns that she had become a political target of third parties) and so that she could continue her extraordinary contributions to AFLDS of visionary leadership and increasing public support while simultaneously protecting other efforts, such as starting healthcare clinics.

34.     Gold's attorney, George Wentz, negotiated on her behalf with the other members of the Board of Directors to reach an agreement for Gold to leave the Board in exchange for a set of promises, including valuable consideration.

35.     In or around February 2022, Gold and the other members of the Board of Directors reached an agreement that Gold would resign from the Board of Directors in exchange for an agreement regarding an ongoing arrangement, which included the following major components: (i) Gold would have an ongoing consulting agreement with AFLDS for monthly compensation, and (ii), as compensation for Dr. Gold's performance, AFLDS would provide her a payment for seed money to start certain healthcare clinics to meet widespread demand from supporters and subscribers (collectively, the "Resignation Agreement").

36.     The Resignation Agreement was a prearranged agreement between Gold and the other members of the Board of Directors, under which Gold's resignation was conditioned on the occurrence of the seed payment and the consulting agreement (and payments thereunder).

37.     At a meeting of the Board of Directors on or about February 2, 2022, Gold orally offered her resignation, performing her obligations under the Resignation Agreement.

38.     Gold (through counsel) and the other members of the Board of Directors negotiated and agreed that the seed money payment would be $1.5 million and that Gold's compensation for the consulting agreement would be $50,000 per month, plus an allowance for residence in AFLDS-owned property.

39.     Despite these agreements, the Board of Directors never performed.

40.     In particular, no portion of the seed payment was ever paid to Gold, and the consulting agreement was never signed.

41.     The seed payment and the consulting agreement were material terms of the Resignation Agreement.

42.     The seed payment and the consulting agreement were <u>both</u> conditions precedent to Gold's resignation taking effect.

43.     Because the seed payment never occurred and the consulting agreement was never signed, the Resignation Agreement never took effect. Specifically, Gold's offered resignation from the Board never took effect.

44.     Additionally or in the alternative, the seed payment and consulting agreement were the other Board members' performance and consideration under the Resignation Agreement. Because that performance/consideration never occurred, Gold was entitled to, and did, rescind the Resignation Agreement, returning the parties to the status quo before the agreement was formed — in other words, with Gold on the Board and continuing as President of AFLDS.

45.     Additionally or in the alternative, Defendants fraudulently induced Gold to enter the Resignation Agreement by promising that AFLDS would pay her the seed money and enter the consulting agreement, despite, apparently, not having present intent to cause that to happen. This was a material misrepresentation, Defendants knew it was false, Gold did not know, Gold reasonably relied on it, Defendants intended she so rely, and Gold was injured as a result. Accordingly, this was fraud, and Gold was entitled to, and did, rescind the Resignation Agreement, returning the parties to the status quo before the agreement was formed — in other words, with Gold on the Board and continuing as President of AFLDS.

46.     As a result, Gold remained (and, as of the filing of this Verified Complaint, remains) a member (and Chairman) of the Board of Directors and President of AFLDS.

7

47.     Because the Resignation Agreement never took effect and/or was never fully performed, Gold never gave her resignation in writing, as required by Section 7.1 of AFLDS' bylaws. The lack of a written resignation is yet another reason that her oral offer to resign never took effect.

48.     Indeed, other than a brief absence during the summer of 2022, Gold has continued to principally direct the operations of AFLDS, including since February 2022.

49.     Landau resigned from the Board of Directors in or about March 2022, leaving only Gold, Gilbert, Mack, and Matthesius as members of the Board.

**D.     Gilbert's Malfeasance and Plan to Take Over AFLDS**

50.     In or around March 2021, Gilbert convinced Gold to deposit $1.1 million in AFLDS funds into the trust account of his law firm.

51.     In doing so, Gilbert failed to disclose the existence of an unwaivable conflict of interest arising from the fact that he was being added to the Board of Directors for AFLDS that same month.

52.     Since at least January 2022, Gold has demanded that Gilbert return those funds to an AFLDS bank account.

53.     Gilbert verbally agreed multiple times to return the $1.1 million to an AFLDS bank account, but he never did so.

54.     Gilbert has ignored Gold's demands, on behalf of AFLDS, that he not draw on the funds.

55.     Instead, Gilbert decided to take over AFLDS, keep the $1.1 million, and hide his other financial improprieties.

56.     In summer 2022, Gold spent 48 days incarcerated on a misdemeanor trespassing charge related to being at the U.S. Capitol on January 6, 2021. As Founder and

8

President of AFLDS, Gold was an invited guest speaker that day, alongside newly elected members of Congress.

57.     During Gold's short absence from AFLDS, she left various AFLDS personnel with instructions about their roles and authority. The Executive Director, Lisa Andrzejewski, was in charge of the AFLDS organization. Gilbert's role during that period was to facilitate an internal financial auditor hired by Gold for AFLDS.

58.     However, during Gold's absence, Gilbert began to overstep his authority as Director of Strategy and to build a platform for a power grab during Gold's absence, all while financially abusing the company.

59.     A few days prior to Gold's incarceration, Gilbert recommended that Gold, on behalf of AFLDS, hire Andrea Wexelblatt, his personal campaign manager for his failed primary campaign for governor of Nevada, as a media manager. Gold approved the hire, and Wexelblatt was hired in a part-time role for $3,000 per month.

60.     Also a few days prior to Gold's incarceration, Gilbert recommended that Gold, on behalf of AFLDS, hire a specific videography company. Gold approved the hire.

61.     In that recommendation and hiring process, Gilbert failed to disclose that the videography company was owned by Wexelblatt, presenting a conflict of interest for both Wexelblatt and Gilbert.

62.     In August 2022, mere days into Gold's absence, Gilbert purported to fire two key AFLDS employees: National Director Alison Rockett and Creative Director John Strand.

63.     Around that time, Gilbert also purported to fire a consultant, Sovereign Alliance, which AFLDS, through Gold and with Gilbert's knowledge and support, had recently hired and paid $30,000.

9

64.     Gilbert had no authority to hire or fire any AFLDS workers, and, as such, had no authority to fire Alison Rockett, John Strand, or consultant Sovereign. Sole authority to hire and fire rested with the Executive Director, Lisa Andrzejewski, and Gold, as President.

65.     Following Gold's release in September 2022, Gold discovered that Gilbert was engaging in malfeasance, including financial improprieties, related to AFLDS.

66.     For example, a certified public accountant confirmed in October 2022 that Gilbert had, since May 2022, taken at least $5,000 per month (and possibly up to $10,000 per month) in AFLDS funds and appropriated it for his personal use. Those withdrawals of company funds were not recorded on the company's books and were not authorized by the Board of Directors or any individual with the authority to authorize them.

67.     These amounts were on top of a salary of $15,000 per month being paid to Gilbert.

68.     The full extent of Gilbert's financial malfeasance, including the full extent of funds he improperly appropriated from AFLDS, is not yet known to Gold.

69.     Gilbert also engaged in other unauthorized and improper actions, to the detriment of AFLDS.

70.     For example, Gilbert improperly, and without authority, caused AFLDS' accountant to pay Wexelblatt (his former personal assistant) $12,000 per month, even though she only worked part-time and had an authorized salary of only $3,000 per month.

71.     Additionally, Gilbert has, for an extended period of time and especially during his failed gubernatorial campaign, substantially failed to perform services for AFLDS, despite drawing a salary (and taking the additional unauthorized amounts on top of that).

72.     During most of 2021 and 2022, Gilbert has been primarily focused on his outside activities, rather than AFLDS. Gilbert has a law practice in Reno, Nevada; he conducted an unsuccessful primary campaign for governor of Nevada spanning 2021 and 2022; and he challenged the results of the June 2022 Nevada primary election in a lawsuit that was found to be frivolous and resulted in a sanctions ruling against Gilbert. *See* Order Granting Def. Joseph Lombardo's Mot. for Sanctions, *Gilbert v. Sisolak et al.*, Carson City, Nev. First Jud. Dist. Ct., Case No. 22 OC 000851B (Sept. 21, 2022).

73.     During his employment with AFLDS, Gilbert was not involved in the day-to-day operations of AFLDS. He had no supervisory responsibility over other AFLDS workers. He rarely attended AFLDS meetings, and he did not interact meaningfully with any AFLDS staff. He was neither involved in nor knowledgeable about the content AFLDS produced.

74.     Gilbert's tasks as "Director of Strategy" primarily involved: making recommendations for potential vendors and employees; handling overflow phone calls for Gold; and doing periodic speaking engagements in Gold's place, when necessary.

75.     Despite being the "Director of Strategy," Gilbert substantially failed to proffer ideas or a strategic plan for the development of AFLDS during his tenure.

76.     In October 2022, Gold reported Gilbert's financial malfeasance to the Board of Directors, AFLDS general counsel Adam Fulton, and AFLDS outside counsel Sally Wagenmaker.

77.     No actions were taken by those parties to address the situation.

**E.     Gilbert's Attempted Seizure of Control of AFLDS**

78.     Gilbert continued his efforts to seize control of AFLDS. As retaliation for Gold's disclosures of Gilbert's malfeasance and continued demands for return of the $1.1 million in AFLDS funds Gilbert was improperly holding in his law firm's trust

11

account, and in an attempt to cover-up, obfuscate, and avoid responsibility for his wrongdoing, Gilbert also launched a smear campaign against Gold.

79.     Gilbert, and/or those acting on behalf of him, improperly seized control of bank accounts belonging to AFLDS.

80.     Gilbert announced to AFLDS employees that Gold purportedly was no longer in charge at the company.

81.     Gilbert purported to fire key AFLDS employees and personnel, without cause and without the authority to do so.

82.     In October 2022, Gilbert, without cause or authority, purported to fire Executive Director Lisa Andrzejewski, shortly after she complained to him about his financial improprieties.

83.     Around this time period, Gilbert also attempted to fire Social Media Director Mike Coudrey.

84.     Gilbert's firings and purported firings of key AFLDS personnel substantially hindered Gold's flagship fundraising event for October 2022, "The Courage Awards."

85.     In late October, Gilbert, without cause or authority, purported to fire Gold and turned off her access to AFLDS emails.

86.     These purported firings were in addition to Gilbert's unauthorized purported firings of National Director Alison Rockett and Creative Director John Strand in August 2022, during Gold's absence.

87.     Also in October, Gilbert began threatening AFLDS employees that he would cut their pay or fire them — actions he was not authorized to take.

88.     Gilbert also fabricated allegations that Gold had acted improperly, which he then spread to AFLDS employees, lawyers, and the community, including through social media.

89.     For example, Gilbert has alleged that Gold improperly used company resources by purchasing a house in the company's name. In reality, the house was properly purchased by the company for company purposes — <u>with Gilbert's knowledge, participation, and approval</u> — and Gold was permitted to live and conduct business meetings and publicity in the house because of the inseparable relationship between her public image and AFLDS's success.

90.     Gilbert has defamed Gold, through his misrepresentations.

91.     Gilbert also began spreading false and defamatory statements that Creative Director John Strand had stolen $100,000 from AFLDS.

92.     As a result of Gilbert's unauthorized actions and attempt to seize control of AFLDS, Gold terminated Gilbert as a worker of AFLDS ("Strategy Director") on or about October 31, 2022. Gilbert has not recognized that termination and purports to still hold both a position with and control of AFLDS.

93.     On or about November 7, 2022, Gilbert, with no authority or cause, purported to fire Operations Director Sarah Denis, Security-Logistics-Procurement Director AJ Andrzejewski, and Communications Director Lisa Alexander.

94.     AFLDS has a total of 11 director-level positions, in addition to the President: Executive Director, National Director, Medical Director, Communications Director, Creative Director, Security-Logistics-Procurement Director, IT Director, Operations Director, Social Media Director, Legal Director, and News Director. Of the 11, Gilbert purports to have fired six, and he has threatened to fire four others — in other words, almost all of the directors.

95.     Additionally, on information and belief, Gilbert recently inappropriately transferred some or all of the $1.1 million in AFLDS funds improperly held in his law firm's trust account to another law firm, to fund separate litigation Gilbert has brought against Gold in Florida.

96.     Such use of company money to fund Gilbert's personal litigation is an additional example of financial impropriety and misappropriation of AFLDS's funds.

97.     Gilbert's actions have harmed, and are continuing to harm, AFLDS. If not enjoined, Gilbert's actions threaten the future of AFLDS.

**F.     Mack and Matthesius's Acts and Omissions**

98.     Mack and Matthesius have supported, facilitated, and/or permitted Gilbert's wrongful acts and attempt to seize control.

99.     For example, Mack and Matthesius failed to act when notified about Gilbert's wrongdoing, or when Gilbert purported to fire the vast majority of AFLDS' directors.

100.    Mack and Matthesius failed to investigate Gilbert's actions or otherwise conduct due diligence after being alerted to them.

101.    Accordingly, Mack and Matthesiuis failed to act in the best interests of AFLDS and in accordance with their fiduciary duties to AFLDS.

102.    Mack has also engaged or participated in financial improprieties and/or misused AFLDS.

103.    For example, in mid-2022, Mack asked Gold to cause AFLDS to donate $2.5 million to an event Mack was organizing. Gold understood, and conveyed to Mack, that this would be inappropriate, as AFLDS's funds had been donated to AFLDS for use by AFLDS. Mack then asked Gilbert to pressure Gold to release $2 million to Mack.

Gilbert raised this issue, as an ethical conflict for Mack, at a Board meeting in or around June 2022.

104.   Of note, Mack's request to Gold to cause AFLDS to donate money to his organization was a recognition of Gold's continued status as a Board member and head of AFLDS.

105.   In or around October 2022, Gilbert purported to hire Mack as "CEO" of AFLDS for $20,000 per month.

106.   Again, Gilbert lacks hiring authority. His purported hiring of Mack lacks effect.

107.   Furthermore, AFLDS does not have the position of "CEO." The bylaws do not provide for such a position. With an Executive Director and a President, there is no need for this nonprofit to also have a CEO.

108.   Gilbert never presented the Board with a resolution for adding this new position.

109.   Indeed, the timing — Mack was purportedly hired shortly after Gold notified the Board about Gilbert's malfeasance — suggests that Mack's purported hiring for a highly-compensated position that never existed before was connected to Mack's failure to act upon Gilbert's malfeasance.

**G.     Basis for Derivative Complaint**

110.   AFLDS does not have members.

111.   Gold is a director of AFLDS and is at least 25% of the voting power of directors of AFLDS.

112.   Gold was a director of AFLDS at the time of the acts/omissions complained of herein.

15

113.    Gold fairly and adequately represents the interests of AFLDS in enforcing AFLDS's rights.

114.    Pursuant to A.R.S. § 10-3631, AFLDS has standing to bring this derivative action.

115.    Gold has made written demand on AFLDS to take suitable action related to the acts/omissions complained of herein.

116.    Irreparable injury to AFLDS would result if Gold waited to file this Verified Complaint until 90 days had passed from the date of written demand.

## CLAIM ONE

### (Declaratory Judgment)

### (Brought Individually and Derivatively)

117.    Plaintiff re-alleges the above allegations as if fully set forth herein.

118.    This claim is brought pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831 *et seq.*, and Ariz. R. Civ. P. 57.

119.    A justiciable controversy exists regarding the makeup of the Board of Directors of AFLDS, specifically, whether Gold remains a director, as well as Gold's continuing roles as Chairman of the Board and President of AFLDS.

120.    Plaintiff, both individually and derivatively on behalf of AFLDS, is entitled to a declaration by the Court that, as of the filing of this Verified Complaint, and before the removal of Defendants requested in Claim Two below, (1) the directors of AFLDS are Gold, Gilbert, Mack, and Matthesius, and (2) Gold remains Chairman of the Board and President of AFLDS.

## CLAIM TWO

### (Judicial Removal of Directors)

### (Brought Derivatively)

121.    Plaintiff re-alleges the above allegations as if fully set forth herein.

122.    As set forth above, Gilbert engaged in fraudulent conduct or intentional criminal conduct with respect to AFLDS.

123.    Mack and Matthesius engaged in, facilitated and/or permitted Gilbert's fraudulent conduct or intentional criminal conduct with respect to AFLDS, and may have also engaged in their own such acts. Mack and Matthesius are, with Gilbert, responsible for the damage to AFLDS caused by that conduct.

124.    Removal of Gilbert, Mack, and Matthesius as directors of AFLDS is in the best interests of the corporation.

125.    Accordingly, the Court should remove Gilbert, Matthesius, and Mack as directors of AFLDS, pursuant to A.R.S. § 10-3810, and bar Defendants from serving on the Board of AFLDS for the maximum period permitted by statute (five years).

## CLAIM THREE

### (Temporary Restraining Order, Preliminary Injunction, Permanent Injunction)

### (Brought Individually and Derivatively)

126.    Plaintiff re-alleges the above allegations as if fully set forth herein.

127.    As set forth herein, Gilbert, with the support and/or assistance of Matthesius and Mack, has engaged in ultra vires and other bad acts related to AFLDS, including, without limitation: financial misconduct/misappropriation of AFLDS funds, purported firings of key personnel, seizure of bank accounts, and threats against employees.

128.    The full scope of the misconduct may be unknown to Plaintiff.

17

129.   Unless enjoined, Defendants will cause and/or permit continued harm to AFLDS, which will become irreparable.

130.   Accordingly, Plaintiff is entitled to injunctive relief, including a temporary restraining order, a preliminary injunction, and a permanent injunction, preventing Defendants from taking ultra vires acts and other bad acts in relation to AFLDS, including threatening or purporting to fire any AFLDS workers, or taking unauthorized funds from the company.

131.   Plaintiff is also entitled to preliminary relief, in the form of a temporary restraining order and preliminary injunction, enjoining Defendants from altering the status quo (with the status quo including Gold as a director and worker of AFLDS, and including John Strand, Alison Rockett, Lisa Andrzejewski, Sarah Denis, Lisa Alexander, and AJ Andrzejewski as workers of AFLDS), including an injunction against threatening or purporting to fire any AFLDS workers, during the pendency of this litigation. Due to their conflict of interest as witnesses in this action, the status quo should not include the continued representation of AFLDS by attorneys Adam Fulton, Sally Wagenmaker, or Kellye Story.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for Judgment in her favor and against Defendants, as follows:

A.   A declaration that, as of the filing of this Verified Complaint, and before the removal of Defendants pursuant to A.R.S. § 10-3810, the Board members of AFLDS are Gold, Gilbert, Mack, and Matthesius, and Gold remains Chairman of the Board and President of AFLDS;

B.   An order removing Gilbert, Mack, and Matthesius as directors of AFLDS, pursuant to A.R.S. § 10-3810, and barring Defendants from serving on the board of ALFDS for the maximum period permitted by statute (five years);

C.   Injunctive relief, preventing Defendants from taking ultra vires acts and other bad acts in relation to AFLDS, including threatening or purporting to fire any AFLDS employees, or taking unauthorized funds from the company, as well as preventing Defendants from altering the status quo of AFLDS during the pendency of this litigation;

D.   For an award of Plaintiff's attorneys' fees, costs, and incurred herein, pursuant to A.R.S. §§ 10-3636, 12-341, and 12-341.01; and

E.   For such other and further relief as the Court may deem just and proper.

**DATED** this 23rd day of November, 2022.

**DICKINSON WRIGHT PLLC**

By: /s/ Bradley A. Burns
    Bradley A. Burns
    Amanda E. Newman
    Adin J. Tarr
    1850 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    *Attorneys for Plaintiff*

**VERIFICATION**

I, Dr. Simone Gold, hereby state as follows:

I am the Plaintiff in this matter. I have read the foregoing Verified Complaint and know the contents thereof. Subject to the following, the contents therein are true to the best of my knowledge and information.

1.      This verification relates solely to the factual statements made in the Verified Complaint. I express no views regarding the legal conclusions, theories, claims, or defenses contained in the Verified Complaint.

2.      As to facts alleged on information and belief, I believe them to be true.

I declare, under penalty of perjury, that the foregoing is true and correct.


Executed: ____November 23____, 2022.

*Simone Gold*
Dr. Simone Gold

4879-3708-4734 v8 [104205-1]

20

1  Bradley A. Burns (#030508)
   bburns@dickinsonwright.com
2  Amanda E. Newman (#032462)
   anewman@dickinsonwright.com
3  Adin J. Tarr (#037878)
   atarr@dickinsonwright.com
4  **DICKINSON WRIGHT PLLC**
   1850 North Central Avenue, Suite 1400
5  Phoenix, Arizona 85004-4568
   Phone: (602) 285-5000
6  Fax: (844) 670-6009
   Firm Email:  courtdocs@dickinsonwright.com

7  *Attorneys for Plaintiff*

8         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9            **IN AND FOR THE COUNTY OF MARICOPA**

10

11 | SIMONE  GOLD,  M.D.,  both  in  her individual  capacity  and  as  a  director  on behalf  of  Free  Speech  Foundation  d/b/a America's  Frontline  Doctors,  an  Arizona nonprofit corporation, | Case No. _____ |

12

13 **CERTIFICATE OF COMPULSORY ARBITRATION**

14                Plaintiff,

15        v.

16 JOSEPH "JOEY" GILBERT, an individual; JURGEN  MATTHESIUS,  an  individual;
17 RICHARD  MACK,  an  individual;  and FREE    SPEECH    FOUNDATION    d/b/a
18 AMERICA'S  FRONTLINE  DOCTORS,  an Arizona    nonprofit    corporation,    in    a
19 derivative capacity,

20                Defendants.

21

22         The undersigned certifies that he is familiar with the dollar amounts and any other

23 limitations set forth by the local rules of practice for the applicable superior court, and

24

25                                     1

26

1  further certifies that this action is not subject to compulsory arbitration, as provided in

2  Rules 72 through 77 of the Arizona Rules of Civil Procedure.

3       **DATED** this <u>23rd</u> day of November, 2022.

4                                     **DICKINSON WRIGHT PLLC**

5                              By: <u>/s/ Bradley A. Burns</u>
6                                  Bradley A. Burns
                                   Amanda E. Newman
7                                  Adin J. Tarr
                                   1850 North Central Avenue, Suite 1400
8                                  Phoenix, Arizona 85004
                                   *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                        2