UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREE SPEECH FOUNDATION,
INC. and JOSEPH GILBERT, an
Arizona nonprofit corporation,

    Plaintiffs,

v.                              Case No.:  2:22-cv-714-SPC-NPM

SIMONE GOLD,

    Defendant.
_____/

**OPINION AND ORDER**[1]

Before the Court is Defendant Simone Gold's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 24), and Plaintiffs' Memorandum in Opposition (Doc. 29). For the reasons explained below, the Court grants the Motion.

## BACKGROUND

A core dispute in this fraud and tort case is Gold's place in Plaintiff organization Free Speech Foundation, Inc. d/b/a America's Frontline Doctors, Inc. ("AFLDS"). Plaintiffs allege that Gold founded AFLDS in 2020 but held

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

"no officer, director, or other official management role with AFLDS" after February 2022. (Doc. 1 at 3, Doc. 29 at 1). Plaintiffs allege that despite this, Gold continued to "represent herself as the founder and public voice of AFLDS" and has "interfere[ed] with AFLDS' operations, funds, donor relationships, [and] employee relationships; convert[ed] and improperly assert[ed] control over AFLDS [information technology], bank accounts, money and resources; defam[ed] and disparage[ed] Mr. Gilbert and others associated with AFLDS, and fraudulently [held] herself out as representative, officer, and director of AFLDS." (Doc. 29 at 1, Doc. 1 at 1-2). Gold alleges she is the Chairman of the AFLDS Board of Directors. (Doc. 24 at 11). Several counts in the Complaint rest on Gold being a "rogue founder" of AFLDS rather than Chairperson of AFLDS. (Doc. 1 at 2).

Plaintiffs' Complaint alleges diversity jurisdiction and seeks injunctive relief. (Doc. 1). Gold moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging this Court's subject-matter jurisdiction. (Doc. 24). Gold challenges both the diversity of the parties and the amount in controversy. (Doc. 24).

## DISCUSSION

Federal courts are courts of limited jurisdiction that only possess the power to hear those cases which they are authorized to under statute and the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994). "[A] federal court is obligated to inquire into subject matter jurisdiction . . . whenever it may be lacking" and should do so "at the earliest possible stage in the proceedings." *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999).

Plaintiffs assert diversity jurisdiction under 28 U.S.C. §1332. Diversity jurisdiction requires that the amount in controversy exceed $75,000, exclusive of interest and costs, and that the action be between citizens of different states. 28 U.S.C. §1332(a)(1). It requires the citizenship of every plaintiff to differ from the citizenship of every defendant. *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005).

A corporation is a citizen of both its place(s) of incorporation and its principal place of business. 28 U.S.C. §1332(c). A corporation's "principal place of business" is its "nerve center." *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010). This is the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The nerve center is where high-level corporate decisions are made, not the location of day-to-day operations. *See Hoschar v. Appalachian Power Co.,* 739 F.3d 163, 172 (4th Cir. 2014) (noting that a corporation's day-to-day operations are not relevant to the nerve center test and "[w]hen a corporation's day-to-day operations are managed in one state and its officers make significant corporate policy in another, the corporation's nerve center and principal place of business is the latter"); *Cent.*

3

*W. Va. Energy Co. v. Mt. State Carbon, LLC*, 636 F.3d 101, 105-107 (4th Cir. 2011) (determining that where "day-to-day operations" occur is irrelevant to the nerve center test); *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile*, No. 18-00429, 2022 WL 2070386 (S.D. Ala. Jun. 8, 2022) (discussing the irrelevance of "day-to-day activities or daily management" under the nerve center test).

It is the burden of the party asserting jurisdiction to establish "by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). Challenges to subject-matter jurisdiction can be "facial" or "factual" attacks under Federal Rule of Civil Procedure 12(b)(1). *Morrison v. Amway Corp.*, 323 F.3d 920, n.5 (11th Cir. 2003). Facial attacks challenge jurisdiction based entirely on the complaint, and the court must take the facts in the complaint as true when deciding the motion to dismiss. *Id.* Factual attacks challenge jurisdiction irrespective of the pleadings, and the court may consider extrinsic evidence when resolving a factual attack. *Id. See also Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1351 (S.D. Fla. 2003) ("[i]n a factual challenge, the defendant has the burden to produce evidence to contradict the plaintiff's allegations. If the burden is met, the allegations do not carry a presumption of truthfulness").

Defendant notes in her Motion that her attack on diversity of citizenship is factual and her attack on the amount in controversy is facial. The Court

starts with the citizenship prong. Because the Court dismisses this case based on the citizenship prong, it need not address the amount in controversy.

The parties agree that Defendant Gold is a citizen of Florida. They also agree that AFLDS is a citizen of Arizona, its place of incorporation. But they dispute the "principal place of business" of AFLDS.

According to Plaintiffs, AFLDS "is an Arizona nonprofit organization with its principal place of business in Tucson, Arizona," Plaintiff Gilbert is a citizen of Nevada, and Defendant is a citizen of Florida. (Doc. 1 at 3). Yet also according to Plaintiffs, "there is no physical principal place of business [for AFLDS] given that [AFLDS'] employees are all over the country and the world." (Doc. 29 at 14).

According to Gold, AFLDS' principal place of business is Naples, Florida. (Doc. 24 at 12-13). As support, Gold cites "three pieces of real property" in Naples in which "frequent meetings are held . . . for senior workers and directors" and in which "officers and directors frequently make decisions." (Doc. 24 at 7-8). Gold alleges that AFLDS' "most significant business operation is the creation of media content and videos" (produced in Naples), that AFLDS' "headquarters" are in Naples, and that "a significant number of AFLDS senior workers live in or around Naples." (Doc. 29 at 7-11). Gold also asserts that "[b]esides Naples, Florida, there is no other single place where AFLDS workers meet and congregate." (Doc. 24 Ex. 1). Gold has submitted affidavits from two

5

individuals discussing the "bulk" of AFLDS' operations being in Florida. (Doc. 24 Ex. 2, 3).

Both parties appear to misunderstand the "nerve center" test the Supreme Court put forth in *Hertz Corp. v. Friend* — the controlling test to determine a corporation's principal place of business. The test is singularly concerned with "where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. at 92-93. The Supreme Court adopted the nerve center test to simplify judicial determinations of "principal place of business." The simplification was needed because the appellate courts were using different standards. *See Hertz,* 559 U.S. at 91-92 (describing the different approaches of the First, Second, Third, Fourth, Fifth, Ninth, Tenth, and Eleventh Circuits in determining a corporation's principal place of business); *see also Vareka Invest. v. Am. Inv. Properties,* 724 F.2d 907 (11th Cir. 1984) (applying a hybrid "place of activities" test and "nerve center" test).

In *Hertz*, the Court resolved the circuit split by holding that a corporation's principal place of business was "where the corporation's high level officers direct, control, and coordinate the corporation's activities." 559 U.S. at 92-93. The Court stated that "lower courts have often metaphorically called [this location] . . . the 'nerve center.'" *Hertz,* 559 U.S. at 80-81. In adopting this "nerve center" test, however, the Court adopted no specific

6

Circuit's iteration of the "nerve center" test. Instead, the Court defined "nerve center" itself.[2]

While both parties agree that *Hertz* governs, they disagree on what the Court should consider in determining AFLDS' "nerve center." Plaintiffs invite the Court to consider the factors the Southern District of Florida considered in *Chusid,* which was decided a few months after *Hertz* and ignores the *Hertz* decision completely. *Chusid v. Swire Pac. Holdings, Inc.,* No. 09-23368, 2010 WL 11505092 (S.D. Fla. Jul. 16, 2010). (Doc. 29 at 11). Gold likewise misreads *Hertz*. It invites the Court to consider "the total amount of business activities that the corporation conducts [in a State] and [to determine] whether they are 'significantly larger' than the next-ranking State." (Doc. 24 at 6). Gold's proposed analysis is the "general business activities" test the Supreme Court expressly rejected in *Hertz*. 559 U.S. at 93.

With both parties missing the mark on the nerve center test, the Court is left to resolve the issue on its own. This task isn't too difficult, as the Court need consider only what the Supreme Court directed it to consider per *Hertz*— "where a corporation's officers direct, control, and coordinate the corporation's

---

[2] *See CostCommand, LLC v. WH Administrators, Inc.,* 820 F.3d 19, 24 (D.C. Cir. 2016) (finding that the nerve center test factors used by courts pre-*Hertz* "retain relevance only to the degree they speak to" *Hertz*'s nerve center test).

activities." *Hertz*, 559 U.S. at 92-93. And under this test Plaintiffs have not met their burden to establish jurisdiction.

In an attempt to establish AFLDS' principal place of business, Plaintiffs have provided the residency of three members of AFLDS' Board of Directors and the locations of AFLDS' bank accounts, accountant, and head of payroll, in-house counsel, information technology director, Director of Social Media, and news team. (Doc. 29 at 13). Plaintiffs also have stated that "decisions of the board are made virtually and in no particular state." (Doc. 29 at 13). Gold, too, has listed AFLDS employees and their residency.[3] Gold has also alleged that she is Chairman of the Board of Directors and she resides in Florida, along with AFLDS' "headquarters."[4] (Doc. 24 at 7-8, 11).

But listing employees and their locations is not enough. The relevant inquiry is not how many people work in a particular location, but "where *a corporation's officers direct, control, and coordinate the corporation's activities*." *Hertz*, 559 U.S. at 92-93 (emphasis added). To determine where AFLDS' nerve

---

[3] Whether everyone listed was still employed by AFLDS at the time of the commencement of this suit is in dispute. In any event, Defendant's list of individuals allegedly employed by AFLDS and residing in Florida includes the Legal Director, the Assistant Legal Director, the Director of Security, the Assistant Director of Security, the Executive Director, the Creative Director, the Director of Photography, two photographers, the Production Assistant, the Nutrition Director, a "consulting doctor and media talent," a "volunteer," the Operations Director, and the Information Technology Director. (Doc. 24 at 11-12).

[4] Whether this "headquarters" truly was a headquarters (and its use for AFLDS purposes) is in dispute. But a "headquarters" location is not necessarily relevant under the nerve center test. *See Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 173 (4th Cir. 2014) (noting "there is nothing in *Hertz* to suggest that a company cannot refer to one office as its 'headquarters' while maintaining its 'nerve center' in another office").

center is, the Court must first know the primary purpose of the organization. *See Johnson v. Smithkline Beecham Corp.,* 724 F.3d 337, n.21 (3d Cir. 2013) (noting that to identify the actual center of direction, control, and coordination, "we first have to acknowledge the nature of the corporation's activities, as it is difficult to locate a corporation's brain without first identifying its body. In this case, GSK Holdings' sole function is to hold assets. Therefore, the question under *Hertz* is where *that activity* is controlled and directed"). The Court must also understand the corporate structure of the organization so the Court can determine who is making the big corporate decisions that direct, control, and coordinate the corporation's activities and where those decisions are being made.

The Court's only information about the primary function of AFLDS comes from the Complaint, which states that AFLDS was organized "exclusively for charitable purposes . . . to perform, every act or acts necessary, incidental to or connected with the furtherance of its charitable, scientific, literary, religious and educational purposes, with a focus on educating the public on the enduring importance of the Bill of Rights to America's history and civic traditions." (Doc. 1 at 3-4). Gold alleges that AFLDS' "most significant business operation is the creation of social media content." (Doc. 24 at 8). These vague descriptions of AFLDS' purpose leaves the Court short of being able to define its "nerve center."

Plaintiffs also fail to explain AFLDS' corporate structure. All that is alleged is that "AFLDS is currently governed and has always been governed by a Board of Directors," and "AFLDS was run by its Board of Directors and staff." (Doc. 1 at 4, Doc. 29 Ex. B). These vague statements offer the Court no insight into how AFLDS operates.

And the bylaws offer no more help to the nerve center analysis. They state the Board of Directors "shall have general powers to manage and direct the activities of the Corporation." (Doc. 29 Ex. A). The bylaws also set an indeterminate number of corporate officers with unspecified responsibilities. (Doc. 29 Ex. A).[5] The Court is not confident it knows about all the potential important corporate decisionmakers within AFLDS. *See Lewis Mech. Sales v. Union Std. Ins. Grp., LLC*, No. 2:16-CV-00496, 2017 WL 11246844 (S.D. Tex. Nov. 8, 2017) (discussing the need for the party asserting federal jurisdiction to "establish[] the identities of its most important decisionmakers"). For example, the Complaint represents Plaintiff Gilbert to be "AFLDS Chairman of the Board, Chief Operating Officer, and Director of Strategy." (Doc. 1 at 4).

---

[5] The bylaws provide for an Executive Director who "shall be the principal executive officer of the Corporation and, subject to the control of the Board of Directors, shall in general supervise and control the day-to-day business and affairs of the Corporation," a Secretary, a Treasurer, and an indeterminate number of "Assistant Officers" who may be elected by the Board of Directors or appointed by the Executive Director if the Board delegates such authority. (Doc. 29 Ex. A). In her Response in Opposition to Motion for Preliminary Injunction, Gold listed eleven "director-level positions," but provided no insight into what these roles entail or the scope of each director's authority. (Doc. 33 at 10).

10

If there is a Chief Operating Officer, is there a Chief Executive Officer? A Chief Information Officer? A complete c-suite?[6] All this ambiguity has left Plaintiffs short of their burden.

Even if the parties agreed on the composition of the Board of Directors, it is unclear whether the Board of Directors (or one or more of the possible corporate officers) truly "direct[s], control[s], and coordinate[s] the corporation's activities" for purposes of the nerve center test. *Hertz*, 559 U.S. at 92-93; *see also Pool v. F. Hoffman-La Roche, Ltd.,* 386 F. Supp. 3d 1202, 1220 (N.D. Cal. 2019) ("Without an understanding of what each director or officer actually does for HLR as a practical matter, where the nerve center of the company is cannot be determined").

In short, Plaintiffs have not provided a clear picture of what decisions the Board makes (or what authority the Board may have delegated to others). Plaintiffs have not even provided a clear picture of who may be considered a corporate decisionmaker for purposes of the nerve center test. And though both Plaintiffs and Gold provided the Court with a list of individuals allegedly employed by AFLDS, the Court only knows their titles, not their true role within AFLDS. Titles are not dipositive of who is making big corporate

---

[6] These questions are compounded by Gold's representation in her Response in Opposition to Motion for Preliminary Injunction that Richard Mack may have also held a c-suite position. (Doc. 33 at 11).

11

decisions (or where those decisions are being made). *See Lewis Mech. Sales v. Union Std. Ins. Grp., LLC*, No. 2:16-CV-00496, 2017 WL 11246844 (S.D. Tex. No. 8, 2017) (noting that a corporation's principal place of business might be where its President and Director work, but that the President and Director "are not, in all instances, decisionmakers by which a corporation's principal place of business is defined"). [7] Plaintiffs failed to provide enough information to establish AFLDS' principal place of business, and thus have not met their burden of showing the Court's diversity jurisdiction.

Because Plaintiffs have not met their burden on the citizenship prong to establish this Court's subject matter jurisdiction, the Court need not address the arguments on the amount in controversy.

Accordingly, it is now

**ORDERED:**

Defendant Simone Gold's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 24) is GRANTED.

1. The Complaint (Doc. 1) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

---

[7] *See also Johnson v. Smithkline Beecham Corp.,* 724 F.3d 337, n.21 (3d Cir. 2013) (discussing an instance in which "a holding company's officers, not its directors, actually control the company's core activities"); *Turner v. Digital Broad. Corp.,* 894 F. Supp. 2d 748, 752 (W.D. Va. 2012) (discussing the distinction between "officers" and "directors").

decisions (or where those decisions are being made). *See Lewis Mech. Sales v. Union Std. Ins. Grp., LLC*, No. 2:16-CV-00496, 2017 WL 11246844 (S.D. Tex. No. 8, 2017) (noting that a corporation's principal place of business might be where its President and Director work, but that the President and Director "are not, in all instances, decisionmakers by which a corporation's principal place of business is defined"). [7] Plaintiffs failed to provide enough information to establish AFLDS' principal place of business, and thus have not met their burden of showing the Court's diversity jurisdiction.

Because Plaintiffs have not met their burden on the citizenship prong to establish this Court's subject matter jurisdiction, the Court need not address the arguments on the amount in controversy.

Accordingly, it is now

**ORDERED:**

Defendant Simone Gold's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 24) is GRANTED.

1. The Complaint (Doc. 1) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

---

[7] *See also Johnson v. Smithkline Beecham Corp.,* 724 F.3d 337, n.21 (3d Cir. 2013) (discussing an instance in which "a holding company's officers, not its directors, actually control the company's core activities"); *Turner v. Digital Broad. Corp.,* 894 F. Supp. 2d 748, 752 (W.D. Va. 2012) (discussing the distinction between "officers" and "directors").

2. The Clerk is DIRECTED to terminate any pending deadlines and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 6, 2022.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record